CHARLES NEBLETT v. H. C. BARRON ET AL.

No. 2126. Decided February 15, 1911.

**1.—Laborer's Lien—Time of Filing—Maturity of Debt.**

Under Sayles' Statutes, articles 3339a, 3339b and 3339c, a farm laborer working by the day under an agreement that he should be paid out of the proceeds of the first cotton sold, has a right to fix his lien on the crop within thirty days from the time fixed thereby for payment, though the services were not rendered within that time before his lien was filed. (Pp. 111-114.)

**2.—Same—Case Stated.**

A laborer on a farm worked by the day, under no employment for any definite period, at various times during May, June, July and August, under an agreement that he should be paid for his services at the rate of one dollar per day out of the proceeds of the first cotton sold out of the crop. A creditor of the employer sued and sequestered the cotton on October 23, and soon after sold it. The laborer filed his account and claim for lien on November 7, and intervened asserting it against the proceeds of the sequestered cotton. Held, that his lien was fixed in due time with reference to the date of maturity of his debt under such contract. He was not required to file claim within thirty days from the expiration of each month or each week of such service. (Pp. 111-114.)

Question certified from the Court of Civil Appeals, Second District, in an appeal from Erath County.

*Daniel & Carlton,* for appellant.

*William Pannill,* for appellee.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The matter presented for decision is stated in the following certificate from the Court of Civil Appeals for the Second Supreme Judicial District:

"There is now pending before us on motion for rehearing case No. 6236, Charles Neblett, appellant, v. H. C. Barron et al., appellees, from the County Court of Erath County, in which said appellant on October 23, 1908, sued the appellee Barron upon a certain note and sequestered two mules and also six bales of cotton raised by Barron as a tenant upon the farm of one J. W. Hall during the year 1908. Hall intervened asserting the landlord's lien upon the cotton. One Adam Caughman also intervened claiming an indebtedness against Barron in the sum of thirty-nine dollars and sixty cents for daily labor to secure which he also asserted a lien on the cotton sequestered by Neblett. The proof shows that soon after the sequestration Neblett sold the cotton, and on original hearing we affirmed the judgment sustaining the intervention of Hall, but set aside the judgment in Caughman's favor, on the ground that he had not asserted his lien in time, as will be more fully seen from the original opinion, a copy of which will be herewith transmitted. In so determining against the claim of Caughman, however, we seem to be in conflict with the opinion in the case of Sparks v. Crescent Lumber Company, 40 Texas Civ. App., 222, 89 S. W., 423, by the Court of Civil Appeals for the First District, in which a writ

of error appears to have been denied by Your Honorable Court, November 24, 1905. But we have no means of determining whether in refusing the writ the ruling was approved and being yet inclined to the construction of the statutes relating to the subject expressed by us on original hearing, we deem it advisable to certify to Your Honors for determination the question presented by the conflict.

"Caughman testified that 'I worked for D. C. Barron as a hired hand from May 25 to August 6, 1908, assisting him in making the crop on the J. W. Hall place for the year 1908, at the rate of one dollar per day, making a total of forty-two dollars for my work which Barron agreed to pay out of the first cotton he sold.' On cross-examination he testified: 'My contract with Mr. Barron was that I was to work by the day and was to receive one dollar per day wages. The work I did was on the one hundred and twenty-five acres rented by Barron from J. W. Hall and worked on the entire one hundred and twenty-five acres in both corn and cotton. This account for my wages has not yet been paid. . . . At the time I filed my account, Mr. Neblett had taken possession of the cotton, but I don't know whether it had been sold or not. Mr. Barron had told me that the plaintiff had taken possession but said nothing as to whether it had been sold. I then made out and filed the account and then gave Barron and Hall a copy. . . . My money was not due until the cotton was sold. My money was to come out of the first cotton sold, and I could not file the account until the money was due. . . . None of the cotton had been sold except what was taken possession of by Mr. Neblett who also took the mules.' The record further shows that Caughman made out and filed his account for record with the County Clerk of Erath County on November 7, 1908.

"Question. Did we err in holding that under Revised Statutes, articles 3339a, 3339b, and 3339c, Adam Caughman was too late in his effort to fix the laborer's lien granted by the first article mentioned?"

To properly decide this question requires a construction of articles 3339a, 3339b and 3339c, Sayles' Texas Civil Statutes, 1907. These articles are as follows:

"Art. 3339a. Whenever any clerk, accountant, bookkeeper, artisan, craftsman, factory operative, mill operative, servant, mechanic, quarryman, or common laborer, farm hand, male or female, may labor or perform any service in any office, store, saloon, hotel, shop, mine, quarry, manufactory, or mill of any character, or on any farm, under or by virtue of any contract or agreement, written or verbal, with any person, employer, firm, corporation, or his, her or their agent or agents, receiver or receivers, trustee or trustees, in order to secure the payment of the amount due by such contract or agreement, written or verbal, the hereinbefore mentioned employees shall have a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, or thing or things of value of whatsoever character that may be created in whole or in part by the labor of such persons or necessarily connected with the performance of such labor or service, which may be owned by or in the possession of the aforesaid employer, person, firm, corporation, or his, her or their agent, or agents, receiver,

or receivers, trustee or trustees; provided, that the lien herein given to a farm hand shall be subordinate to the landlord's lien now provided by law."

"Art. 3339b.　Whenever any person, employer, firm, corporation, his, her or their agent or agents, receiver or receivers, trustee or trustees, shall fail or refuse to make payments as hereinafter prescribed in this chapter, the said clerk, accountant, bookkeeper, farm hand, artisan, craftsman, operative, servant, mechanic, quarryman, or laborer, who shall have performed service of any character, shall make or have made duplicate accounts of such service, with amount due him, or her for the same, and present or have presented, to aforesaid employer, person, firm, or corporation, his, her or their agent or agents, receiver or receivers, trustee or trustees, one of the aforesaid duplicate accounts within thirty days after the said indebtedness shall have accrued. The other of the said duplicate accounts shall, within the time hereinbefore prescribed, be filed with the county clerk of the county in which said service was rendered, and shall be recorded by the county clerk in a book kept for that purpose. The party or parties presenting the aforesaid account shall make affidavit as to the correctness of the same. A compliance with the foregoing requirements in this article shall be necessary to fix and preserve the lien given under this chapter; and the liens of different persons shall take precedence in the order in which they are filed; provided, that all persons claiming the benefit of this chapter shall have six months within which to bring suit to foreclose the aforesaid lien; and provided, further, that a substantial compliance with the provisions of this article shall be deemed sufficient diligence to fix and secure the lien hereinbefore given; provided, that any purchaser of such products from the owner thereof shall acquire a good title thereto, unless he has at the time of the purchase actual or constructive notice of the claim of such lienholder upon such products, said constructive notice to be given by record of such claim, as provided for in this chapter, or by suit filed."

"Art. 3339c.　Under the operation of this chapter, all wages, if service is by agreement performed by the day or week, shall be due and payable weekly, or if by the month, shall be due and payable monthly. All payments to be made in lawful money of the United States."

As we interpret the testimony of Caughman, his employment was not for a fixed or definite time, but, from its nature, was more or less indefinite, but that for such time as he did labor his compensation was fixed and measured at the rate and sum of one dollar per day for the time he so labored. It appears also from his testimony, as contained in the certificate, that the entire amount of his hire was to be paid when the cotton, or the portion of same first disposed of, was sold. Therefore the maturity of his demand was postponed, by contract between him and his employer, for several months beyond the completion of his first month's work. To hold that in an employment which might and which frequently would last during the entire year that the employee must, within thirty days from the expiration of each month, or in a case to which the terms of the statute might seem to apply,

within thirty days from the expiration of each week's service, file · and fix his lien, would not only lead to great practical inconvenience, but substantially to a denial of the right of the parties to fix, by contract, the maturity of the wages contracted to be paid. Of course a time for payment might be fixed at a period so remote as to operate as a matter of law as a legal fraud on the rights of other creditors, but we have no such case here presented. As was said by Chief Justice Gill ˙in Sparks v. Crescent Lumber Co., 40 Texas Civ. App., 222, 89 S. W., 423: "The contention of appellant that article 3339c, fixing a due date for the wages of daily and weekly laborers, being passed for the benefit of other creditors, limited the right of day laborers to agree on a due date, is without merit. There is nothing in its terms which forbids the right to contract as to a due date, or imposes upon such a contract the penalty of forfeiture of the lien. The lien itself is predicated upon a contract and presupposes the right to make it. If they contract to be paid˙ at the end of each day, then for the purpose of fixing the lien, the time shall be computed from the end of the week. If the payment is contracted to be paid at the end of each week, the time is computed from the contract due date. So of employment by the month. It is thus apparent that the last cited article was enacted to free the day laborer of the necessity of computing the time from the close of each day's work." So here the article last mentioned did not imperatively fix the time of the maturity of Hall's obligation so as to defeat the lien of Caughman if not filed within thirty days from the time he quit his service. While not free from doubt we have concluded that under the facts stated Caughman was not too late in his effort to fix his lien.