BARTON v. WICHITA RIVER OIL CO. et
al. (No. 8364.)*

(Court of Civil Appeals of Texas. Ft. Worth.
April 22, 1916. On Motion for Rehearing
June 3, 1916. Rehearing Denied June 24,
1916.)

1. CHATTEL MORTGAGES ☾⟶138(1)—EXISTING
LIEN LAW—LABORERS' LIEN—PRIORITY.
Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 5644, giving to mechanics, laborers, etc.,
a first lien against the products of their work
and labor, in force at the time of a chattel
mortgage executed by an oil well company to
secure the purchase price of its machinery and
tools, the claim of laborers engaged in drilling
an oil well with such machinery and tools,·if
within the statute, was prior to the lien of the
chattel mortgage, since the statute was to be
read into the mortgage contract as a part there-
of and as if expressly assented to by the par-
ties at the time of the contract, article 5671,
providing that nothing in the title should impair
the rights of parties who claim liens by special
contract or any other lien not covered by the
statute, not applying.
[Ed. Note.—For other cases, see Chattel Mort-
gages, Cent. Dig. §§ 228, 229, 231–236; Dec.
Dig. ☾⟶138(1).]

2. CHATTEL MORTGAGES ☾⟶157(2) — PRIORI-
TIES—LABORERS' LIEN—BURDEN OF PROOF.
The assignee of claims of laborers engaged
in drilling an oil well, who, after foreclosure,
asserted a lien under Vernon's Sayles' Ann.
Civ. St. 1914, art. 5644, superior to that of
an existing chattel mortgage, had the burden
of showing that such lien was given by the
statute.
[Ed. Note.—For other cases, see Chattel Mort-
gages, Dec. Dig. ☾⟶157(2).]

On Motion for Rehearing.

3. MINES AND MINERALS ☾⟶112(3)—LIENS—
DRILLING OIL WELL—"MINE"—"MINERAL."
—"MINER"—STATUTE.
Vernon's Sayles' Ann. Civ. St. 1914, art.
5644, enacted in 1895 when oil wells in the
state were not generally known and considered,
gives to any one laboring in any mine, quarry,
factory, or mill of any character a first lien
upon the products, machinery, etc., created by
such labor or necessarily connected with its
performance that may be owned by or in the
possession of the employer. Rev. St. 1911, art.
5502, subds. 1, 6, declare that the ordinary sig-
nification shall be applied to words, and that
in all interpretations, the court shall look for
the intention of the Legislature, keeping in view
the old law, the evil, and the remedy, and
the rule prescribed by law is that statutes shall
be liberally construed with a view to effect their
objects and to promote justice. Const. art. 1,
§ 3, declares that no man, or set of men, is en-
titled to exclusive privileges but in considera-
tion of public services. Held, that a "mine"
is an excavation, properly underground, for
digging out some useful product, as ore, metal,
or coal, any deposit of such material suitable
for excavation and working; that "to mine"
is to obtain by digging out of the earth, to dig
into the earth for ore; that a "miner" is one
who mines in any sense, especially one whose
occupation is to excavate ore, coal, etc., in a
mine; that while oil is classed as a "mineral,"
that term refers ordinarily to minerals in place,
and not to substances in solution and migratory,
such as oil; and that an oil well was not a
mine or the driller a miner, and hence that a

driller had no lien on the oil company's machin-
ery and tools used in drilling the well.
[Ed. Note.—For other cases, see Mines and
Minerals, Cent. Dig. § 235; Dec. Dig. ☾⟶
112(3).
For other definitions, see Words and Phrases,
First and Second Series, Mine; Miner; Min-
erals.]

Appeal from District Court, Wichita Coun-
ty; J. W. Akin, Judge.

Suit by S. I. Barton against the Wichita
River Oil Company and Claude Minor. Judg-
ment for plaintiff, .making the lien of his
chattel mortgage inferior to the laborers'
liens foreclosed by defendant Minor, and dis-
charging defendant Minor, and plaintiff ap-
peals. Reversed and rendered for plaintiff,
with a foreclosure of his chattel mortgage
against all the defendants.

John C. Kay, of Wichita Falls, for appel-
lant. C. M. McFarland, of Wichita Falls, for
appellees. ·

CONNER, C. J. This suit was instituted
by S. I. Barton against the Wichita River
Oil Company upon promissory notes aggre-
gating some $2,048.84, which had been given
by the oil company to the Keystone Driller
Company for the purchase money of certain
oil well machinery, supplies, and tools. The
plaintiff alleged that by assignment he had
become the owner of the notes, and that to
secure their payment the Wichita River Oil
Company had executed and delivered to the
Keystone Driller Company a chattel mort-
gage upon all of the oil well machinery, sup-
plies, and tools sold at the time, and for
which the notes were given; that the mate-
rials so sold were not delivered to the oil com-
pany until after the execution of the notes,
and until after the said chattel mortgage had
been duly filed for record in Wichita county.
As against the Wichita River Oil Company
the prayer of the petition was for a recovery
of the amount of indebtedness shown by the
note, with a foreclosure of the chattel mort-
gage lien. It was further alleged, however,
that one Claude Minor was claiming some
interest in the machinery and supplies cover-
ed by the mortgage, and further prayer was
made to the effect that he be made a party
defendant, and that the plaintiff have judg-
ment against him also for a foreclosure of
the chattel mortgage lien.

Claude Minor appeared and alleged, in
substance, that he and others, whose claims
'he owned by assignments duly made, had
worked for the Wichita River Oil Company,
and used the machinery and tools described
in the plaintiff's petition in drilling an oil
well, for which labor the Wichita River Oil
Company became indebted in the sum of
$1,160.75; that later, to wit, on November
16, 1914, laborers' liens against said machin-
ery, etc., had been filed with the county clerk
in the manner provided by law, after which
time Claude Minor had instituted suit in

---

☾⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

the district court of Wichita county against said Wichita River Oil Company for his debt, with foreclosure of said laborers' liens; that said liens had been duly foreclosed and the property sold thereunder, at which sale said Claude Minor became the purchaser, and by reason of which it was alleged he was then the owner of the property upon which the plaintiff sought to foreclose the chattel mortgage lien.

A trial was had upon the 30th day of June, 1915, and resulted in a judgment for the plaintiff, S. I. Barton, against the defendants, composing the Wichita River Oil Company for the debt, interest, and attorney's fees, as evidenced by the notes declared upon in the petition. It was further adjudged, however, that the plaintiff's lien, as evidenced by the chattel mortgage declared upon, was "inferior and not prior" to the laborers' liens which had been foreclosed by the defendant Claude Minor, and the plaintiff's prayer to foreclose his chattel mortgage lien was therefore denied, and the defendant Claude Minor entirely discharged. From this judgment the plaintiff, S. I. Barton, has appealed.

[1] The facts are undisputed, and are as stated in the pleadings of the parties, as above substantially given, and the sole question presented for our determination is whether, under the circumstances, the laborers' lien as claimed by the appellee Claude Minor was superior to the lien of the chattel mortgage owned by the plaintiff. If so, the judgment should be affirmed. If not, the judgment should be reversed and here rendered for the appellant.

Title 86, Vernon's Sayles' Texas Civil Statutes, vol. 4, treats of judgment liens, of mechanics, contractors, builders, and materialmen liens, of liens of railroad laborers, of liens on domestic vessels, of keepers of live stock of chattel mortgages, and other liens. The article of the statute upon which appellee relies for the superiority of his laborer's lien over the chattel mortgage lien is article 5644, found in chapter 4 of the title referred to, and which reads:

"That whenever any clerk, accountant bookkeeper, artisan, craftsman, factory operator, mill operator, servant, mechanic, quarryman, or common laborer, farm hand, male or female, may labor or perform any service in any office, store, saloon, hotel, shop, mine, quarry, factory or mill of any character, or who may perform any service in the cutting, preparation, hauling, handling, or transporting to any mill, or other point for sale, manufacture or other disposition, logs or timber, or who shall perform any service upon any wagon, cart, tram, or railroad or other means or methods of transporting such logs or timber, and in the construction or maintenance of such tram or railroad, constructed or used for the transportation of logs or timber to or for such mills or to its owner or operator, or to points for sale, shipment or other disposition, or any farm hands, under one or by virtue of any contract or agreement, written or verbal, with any person, employer, firm, corporation, or his, her, or their agent or agents, receiver or receivers, trustee or trustees, in order to secure the payment of the amount due or owing under such contract or agreement, written or verbal, the hereinbefore mentioned employés shall have a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, wagons, carts, tramroads, railroads, rolling stock, and appurtenances, or thing or things of value, of whatsoever character that may be created in whole or in part by the labor of or that may be used by such person or persons, or necessarily connected with the performance of such labor or service, which may be owned by or in the possession or under the control of the aforesaid employer, person, firm, corporation, or his, or their agent or agents, receiver or receivers, trustee or trustees; provided, that the lien herein given to a farm hand shall be subordinate to the landlord's lien now provided by law."

It is to be noted that the statute quoted gives to those persons to whom it applies a "first" lien upon the property specified to secure the character of labor to which the article relates, and appellant attacks the judgment below for the reason that it has been specially provided in article 5671 of chapter 8, title 86, relating to "other liens" than those theretofore specified in the title, that:

"Nothing in this title shall be construed or considered in any manner impairing or affecting the rights of parties to claim liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity, or by any statute of this state, or any other lien not treated of under this title."

Appellant's insistence is that articles 5644 and 5671, both of which have been quoted and both of which are parts of the same title, are to be construed together, and that, when so construed, article 5644, under which appellee claims, should not be given superior effect over a chattel mortgage lien that was duly executed and recorded upon the property involved prior to the time when appellee's labor therewith was performed, but we have been unable to adopt this contention, and thus disturb the judgment below. To give to article 5671 the effect contended for would be to wholly nullify the express declaration that the laborers' lien shall be a "first" lien. If appellee and his assignors are within the class of persons named in article 5644, and entitled thereunder to the laborer's lien upon the oil well machinery with which they worked, article 5671, as we think, can have no application, for the reason that it is undisputed that the laborer's lien law (article 5644) was in force at the time the chattel mortgage upon which appellant relies was executed and recorded, and therefore is to be read into the mortgage contract as if a part thereof, and as if expressly assented to by the parties to the contract at the time. Thus, it is said in 6 Ruling Case Law, §§ 314, 315, p. 325:

"Conformably to the well-established rule that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms, the obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribed. * * * The provision of the Constitution

which declares that no state shall pass any law impairing the obligation of contracts does not apply to a law enacted prior to the making of the contract, the obligation of which is claimed to be impaired, but only to a statute of a state enacted after the making of the contract. The obligation of a contract cannot properly be said to be impaired by a statute in force when the contract was made, for in such cases it is presumed that it was made in contemplation of the existing law."

And in 1 Jones on Mortgages (7th Ed.) § 609. in speaking of priorities between mortgages and mechanics' liens, it is said, among other things, that:

"Lien laws in force at the time of the execution of a mortgage enter into and become a part of the contract; and if these laws provide that certain liens shall be paramount over all other incumbrances, whether prior or subsequent, a mortgagee takes his mortgage subject to such liens as may afterward be acquired under the statute. But laws enacted after the execution of a mortgage cannot have the effect of creating a lien superior to such existing mortgage, for such laws are repugnant to the provisions of the federal Constitution, forbidding the impairment by any state of the obligations of a contract."

So in the familiar statutes embodied in title 86, relating to farm hands and landlords, the preference liens therein conferred have been expressly held to be prior in right to pre-existing contract liens. See Neblett v. Barron, 104 Tex. 111, 134 S. W. 208; Id., 160 S. W. 1167; Cash v. First Nat. Bank, 26 Tex. Civ. App. 109, 61 S. W. 723; Ivy v. Pugh, 161 S. W. 939. See, also, Sparks v. Lumber Co., 40 Tex. Civ. App. 222, 89 S. W. 423, where, as we infer from the opinion, the preference given by the very article under which appellee claims in this case was upheld as against a prior contract lien.

[2] We, therefore, as stated, feel unable to disturb the judgment below upon the only theory on appeal that appellant has presented. We nevertheless have concluded that the judgment was erroneous for the reason that appellee did not bring himself within the statute upon which he relies. The beneficial operation of the statute must be confined to the particular classes of laborers specified in the statute. To such persons alone is a first lien given, and it seems manifest that before a laborer of the kind here involved is entitled to supersede, or to be given priority of lien over a previously executed contract lien, of which he, by registration or otherwise, has notice, he should show himself to be strictly within the statute, for such preference or priority is not given by any other law. Such preference or priority is indeed, save for the statute, contrary to well-established principles. Thus it is said in 1 Jones on Mortgages, § 609, from which we have heretofore quoted, that:

"A mortgage executed before the commencement of a building erected on the land is paramount to a mechanic's lien for work and materials furnished for the building by one having actual or constructive notice of such mortgage."

The author here is evidently speaking of the general rule, inasmuch as later in the same section, as we have heretofore quoted, it is stated that if a priority is given by a statute in existence at the time of a contract lien, the statutory priority will be given effect. In the case of Blackford v. Ryan, 61 S. W. 161, by one of our Courts of Civil Appeals, it was held that the lien given to livery stable keepers by article 5664, ch. 8, tit. 86, was not entitled to priority over a previously ·executed contract lien of which he had notice, the statute there considered, as will be seen by a reference thereto, not giving a first or preference lien. To the same effect is the case of Masterson v. Pelz, 86 S. W. 56, by the Court of Civil Appeals for the Fourth District. · And in stating the general rule it is said in 27 Cyc. page 234:

"Where property is subject to a mortgage or other incumbrance at the time when the building or work, or furnishing of materials, is commenced, such lien is entitled to priority over any mechanic's lien arising out of the improvement of the property."

So that we think we must emphasize the proposition that before appellee was entitled to the "first lien," as asserted by him, it was necessary that he clearly show that he was one of the classes of persons specified in the statute, and that the labor performed by him and his assignors was of the character of labor contemplated thereby. The burden of proof was upon appellee to do this, and, as indicated, we think he has not discharged this burden. By a close scrutiny of the article of the statute under consideration (5644), it will be seen that it applies in terms: First, to any clerk, or other person who may labor, or perform, any service "in any office, store, saloon, hotel, shop, mine, quarry, factory or mill, of any character"; second, to any person who may perform any service "in cutting, preparation, hauling, handling, or transporting to any mill or other point for sale, manufacture, or other disposition, logs or timber," or upon wagons or other means, of transporting such "logs or timber"; and, third, to "farm hands" working under contract for wages, etc. All of these persons are given a first lien upon the products, machinery, tools, fixtures, etc., "that may be created (in whole or in part)" by such labor, or that may be necessarily connected with the performance of the labor required that may be "owned" by or in "possession" of the employers.

It seems quite plain to us that the labor performed by appellee, and others under whom he claims, was not in any office, store, or other place named in the article of the statute, nor was it in the cutting, preparation, or hauling of logs or timber to a mill, nor was it as a farm hand, nor was the labor performed for the protection or creation of the property upon which the lien was foreclosed, nor for its betterment nor preservation, and hence entitled to priority of payment on equitable principles as developed in the decisions. See Provident Institution v.

Mayor et al. of Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, 28 L. Ed. 1102; McIlhenny Adm'r & U. T. Co. v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 705. On the contrary, the labor here was in sinking a well with machinery and tools used as mere instrumentalities for the prosecution of a work not comprehended by article 5644. However true it may be that the "laborer is worthy of his hire," and however desirable it may be that our Legislature should provide lien laws for the security of every class of labor, it has not thus far done so. No preference lien has been given by the law to a mere teamster not laboring upon a railroad, nor engaged in hauling logs to a sawmill, nor to a cowboy upon the horse he rides in rounding up his employer's herds, nor in numerous other cases that might be mentioned. Appellee cites a number of cases as supporting the judgment, but, in our opinion, they fall within the statute, and hence are not in point, unless it is the case of Red Deer Oil Development Co. v. Huggins, 155 S. W. 949, in which a writ of error was refused by our Supreme Court (161 S. W. xvi). That seems to have been a case where laborers were awarded liens against certain property of the defendant engaged in drilling a well for the development company, but the character of the property upon which the lien was foreclosed does not appear. From a reading of the opinion we cannot say that it was, as here, upon the drill machinery and tools with which the well was sunk. Moreover, no question in that case seems to have been made of whether the laborers brought themselves within the statute now under consideration. So that we feel at liberty to follow our own judgment in the matter.

It is accordingly ordered that the judgment below be reversed in the particular under consideration, and here rendered for appellant, as was done below, with a foreclosure of his mortgage lien against all parties defendant upon the property described in his petition, together with all costs in both courts.

## On Motion for Rehearing.

[3] Appellee presents a very forceful and persuasive motion for rehearing. No fault, of course, is found with our conclusion that the laborer's lien is, by reason of the statute, superior to the contract lien previously executed and recorded, but it is plausibly insisted that the labor performed by appellee Claude Minor, and those whose claims he holds, was performed in a "mine," and hence that such laborers are within the purview of Revised Statutes, art. 5644, quoted in our original opinion. The contention is that oil is a mineral, and that hence one engaged in the labor of extracting it from under the surface of the earth, whatever be the method of doing so, is a miner engaged in mining.

Appellee so paraphrases the statute as to make it read:

"That whenever any * * * common laborer * * * may labor or perform any service in any * * * mine * * * of any character."

—he is entitled to a lien, and emphasis is given the terms "of any character," as qualifying the term "mine," as well as the other terms of the statute, so that, as appellee contends, if drilling an oil well is mining "of any character," then appellee is within the statute. It is to be implied from this argument that, while ordinarily a driller engaged in drilling or boring an oil well may not be classified as a "miner," or as engaged in mining, in view of the qualifying terms it may and should be so held.

It will be found, however, that the article of the statute under consideration was accurately quoted in our original opinion, and that as so quoted the terms "of any character" qualify the terms "factory" and "mill," and not the term "mine." It should also be noted that in immediate connection with the word "mine," the statute (article 5644) specifies a "quarry" as one of the protected places, and in other parts of the article names a "quarryman" as one of the classes of laborers intended to be benefited. Rock or stone in place may be a quarry, and one employed in its displacement for commercial purposes is a quarryman. Yet stone or rock in its most general sense is, like oil and gas, classed as mineral. If, therefore, the legislative body in the enactment of article 5644 entertained the view now urged in behalf of appellee that any person employed in taking from or under the earth's surface any substance whatever that is within the general classification of mineral is a miner, or performing service in or about a "mine," then no reason is perceived why the words "quarry" and "quarryman" should have been inserted in the statute. In that event the simple word "mine," when applied to other words of the statute, would have been allsufficient. Indeed the use of the words "mine" and "quarry" in immediate connection indicates that the word "mine" was not used in any other sense than as ordinarily understood. This conclusion receives added force when it is remembered that in 1895, when the laborer's lien law now considered was enacted, such a thing as an oil well in Texas was hardly thought of, or at least was not generally known and considered. The term "mine," therefore, as used in the statute, must be construed as it stands without expansion or enlargement because of qualifying terms relating thereto. Our statute, so far as now pertinent, declares that:

"1. The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such art or trade, or with reference to such subject-matter. * * *"

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Revised Statutes 1911, art. 5502.

What then is the ordinary signification of the word "mine"? We have examined numerous definitions of the terms "mine" and "mining," and those given by Webster have perhaps received as general judicial approval as any. His primary definition of "mine," when used as a noun, is:

"An excavation, properly underground, for digging out some useful product, as ore, metal, or coal. (2) Any deposit of such material suitable for excavation and working; as a placer mine."

When used as a verb the same lexicographer says "to mine" is:

"To obtain by digging out of the earth; also to make diggings into for ore or the like, as coal is mined. 'They mined rich veins of silver.'"

Webster defines a miner as:

"One who mines in any sense; especially one whose occupation is to excavate ore, coal, etc., in a mine."

In 27 Cyc. p. 531, it is said:

"The primary meaning of the word, 'mine,' standing alone, is an underground excavation made for the purpose of getting minerals; a pit or excavation in the earth from which metallic ores, or other mineral substances are taken by digging."

While it is true that in classifying the earth's substances oil is classed as a mineral (see 27 Cyc. 532); and that the method of its extraction, whether by digging, trenching, or otherwise, is immaterial in a consideration of the question, yet as it seems to us the definitions given are ordinarily referable to minerals in place, such as iron, gold, silver, salt, sulphur, etc., and not to substances, though classed as mineral, that are in solution and migratory such as gas and oil. It had not occurred to us on original hearing that the well, upon and about which Claude Minor and his assignors worked, was a "mine," or that they were "miners," and we feel safe in saying that ordinarily they would not be so designated, and by the statutory rule of construction quoted it is the ordinary, and not a strained or exceptional, significance that must be given the term "mine" as used in the statute, by virtue of which appellee claims. It is, we think, common knowledge that an oil well is simply so designated, and that the one engaged in its boring or drilling is designated as a driller. If this be true— and we do not think it can be gainsaid—we cannot designate an oil well as a mine, or the driller as a miner, without violating the rule of construction we are directed to follow, for it, by necessary implication, declares that words used in our civil enactments, when connected with a particular trade or subject-matter, must be given the signification attached to them by experts in such art or trade, or with reference to such subject-matter.

Appellee cites several cases, including Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86

S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N. E. 818, 36 L. R. A. (N. S.) 1108; People v. Bell, 237 Ill. 332, 86 N. E. 593, 19 L. R. A. (N. S.) 746, 15 Ann. Cas. 511; Isom v. Rex Crude Oil Co., 147 Cal. 659, 82 Pac. 317; Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46; McIntosh v. Ropp, 233 Pa. 497, 82 Atl. 949; Weaver v. Richards, 156 Mich. 320, 120 N. W. 818; Consumers' Gas T. Co. v. Quinby, 137 Fed. 882, 70 C. C. A. 220; Berentz v. Belmont Oil Co., 148 Cal. 577, 84 Pac. 47, 113 Am. St. Rep. 308; Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 South. 867; Red Deer Dev. Co. v. Huggins, 155 S. W. 949— that in an indirect and inferential way seem to support his present contention that an oil well is a mine, but the cases that we have been able to find most nearly in point are the cases of Guffey Petroleum Co. v. Murrel, by the Supreme Court of Louisiana, reported in 127 La. 466, 53 South. 705, and Kreps v. Brady, by the Supreme Court of Oklahoma, reported in 37 Okl. 754, 133 Pac. 217, 47 L. R. A. (N. S.) 106. In the case first mentioned, the court had under consideration the Constitution and laws of Louisiana, which, in substance, exempted from taxation property used in mining operations, and the exemption was claimed in that case by the oil company, the property involved being such as is usual in developing, storing, and marketing oil secured by drilling. In the course of the opinion the court defines the terms "mine" and a "mining operation" as understood in their most usual signification, and, among other things, said:

"A productive oil well or aggregation of them is always universally and invariably known as an 'oil field.' Who ever heard of such being called a 'mine'? If an oil well was a 'mine' in the usual signification of the word, surely sometime, somewhere, some intelligent person would be heard to designate it by that term; but it is never done. Now a 'mining operation' must certainly be something having to do with a mine, and, if an oil well is never known in the ordinary and customary use of language as a 'mine,' then neither the making nor operating of one would possibly be considered a mining operation in the ordinary signification of the word. He who works in a mine is termed a 'miner,' but no one ever heard of a laborer at an oil well being called a 'miner.' It is shown by the testimony that an oil well is too small for a man to get into, even if such was necessary or desirable, which it is not. We think it absolutely clear that the words 'mine' or 'mining operation' never refer to oil wells or oil production in ordinary parlance."

The Oklahoma case was one where the plaintiff sued for personal injuries caused by a fellow servant while working with or about a derrick and machinery of an oil well. It seems that by the laws of Oklahoma they have abrogated the common-law doctrine relieving the master from liability for injuries proximately caused by a fellow servant when the injuries are received while engaged in a mining operation. The court, therefore, found it necessary to determine in that case whether the drilling of oil wells

was mining, and the court, after quoting numerous definitions of the words "mine," "mines," "to mine," etc., concluded that drilling a well in search of oil or gas was not "mining" within the meaning of the law under consideration.

It would thus seem that unless we are to give a strained construction out of the ordinary to the term "mine," as used in the laborers' lien law (article 5644) we must adhere to the conclusion stated in our original opinion that appellee has not brought himself within that statute. In now concluding to do this we have not overlooked the rule of liberal construction appellee invokes. This rule, as prescribed by law, is that our statutes "shall be liberally construed with a view to effect their objects and to promote justice." It cannot be said that the object of the Legislature in enacting article 5644 of the Revised Statutes was to give a lien to every laborer. As originally pointed out, the lien is only given laborers of designated classes, and the vital question for our determination is simply whether laborers of appellee's class are included in the legislative grant, and not whether his class ought to have been included. The latter question is for the Legislature, and not for the courts. Nor, so far as we can apprehend, are we required to give an unusual construction to the term "mine" in order to "promote justice." The case before us is one where the owner of certain well-digging machinery sells it, and, to secure a part or all of the unpaid purchase money, reserves or takes a written lien upon all such machinery from the vendee and duly records the lien. The vendee thereafter employs the appellee and others who use and labor with such machinery in drilling an oil well. They do not labor upon or with such machinery in its creation or in or for its improvement, and thus benefit the owner or maker and raise a natural equity in themselves for payment. On the contrary, they use the machinery as mere instruments in the prosecution of their occupation; constantly deteriorating the same, and without which their occupation as drillers would be gone. Of the mortgage and of the fact that the machinery had not been paid for appellee and his assignors had full notice constructively by force of our registration statutes. Under such circumstances, what principle of justice is to be "promoted" by a determination of the question under consideration in appellee's favor? Is it not at least a simple question of whether appellee has shown himself to be one of that class of laborers to whom the statute gives a first lien? We think it is, and in our thinking on the subject no reason has occurred to us why, if appellee is within the particular statute under consideration, the borer or driller for ordinary artesian or other water is not also, and no one thus far has so contended, for water, as oil and gas is likewise classed as a mineral in the kingdoms of matter. See Ridgway Light & Heat Co. v. Elk County, 191 Pa. 465, 43 Atl. 323. In 5 Words and Phrases, p. 4515, citing Westmoreland & Cambria Natural Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731, the writer says:

"Water, like gas and oil, is a mineral, but a mineral with peculiar attributes. The decisions in ordinary cases of mineral rights, etc., have never been held as unqualified precedents in regard to flowing, or even to percolating waters. Water and oil, and still more strongly gas, may be classed by themselves, if the analogy is not too fanciful, as minerals feræ naturæ. In common with animals, and unlike other minerals, they have the power and tendency to escape without the volition of the owner."

See, also, Texas Co. v. Daugherty, 176 S. W. 717; Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. (N. S.) 986, 8 Ann. Cas. 1117. To extend the benefit of the statute to the driller for oil and not to the driller for water, while the conditions are so similar, would at least seem to violate the spirit of section 3, art. 1, of our Constitution, which declares that:

"All freemen, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

We conclude that appellee's motion for rehearing must be overruled.