B. I. SPARKS, RECEIVER, ET AL. V. CRESCENT LUMBER COMPANY ET AL.

Decided June 28, 1905.

**1.—Laborer's Lien—Hauling With Teams.**

Parties engaged in hauling logs with their own teams for a mill company for a fixed price per 1,000 feet were not, where the contract did not disclose what part of the consideration was earned by the use of the teams, separately from their labor, entitled to a preferred lien under the statute giving laborers a first lien for labor and service performed in any mill, manufactory, etc. Sayles' Civ. Stats., art. 3393a, Gen. Laws 1897, p. 218.

**2.—Same—Time of Filing Claim.**

The provision of the statute that "all wages, if service is by agreement performed by the day or by the week, shall be due and payable weekly, or if by the month shall be due and payable monthly," did not debar day laborers from contracting that their wages should be due and payable on the 10th of the succeeding month, and hence the filing of their claims within 30 days from such due date was sufficient to fix the lien as being within 30 days after the indebtedness had "accrued." Sayle's Civ. Stats., arts. 3393b, 3393c.

**3.—Same—Property Subject to Lien—Mill and Machinery.**

Under the terms of the statute giving the laborer's lien on all products, machinery tool fixtures and appurtenances . . . and all things of what-soever character that may be created in whole or in part by the labor of such person "or necessarily connected with the performance of such labor or service which may be owned by the employers," the lien will attach to a sawmill as well as the machinery therein. Sayles' Civ. Stats., art. 3393a.

Appeal from the District Court of Galveston. Tried below before Hon. Geo. E. Mann, Special Judge.

*Maco & Minor Stewart,* for appellant.—Persons engaged with their own wagons and teams in hauling logs at a contract price of $3 per thousand were not entitled to a lien. The statute by its express terms is confined to laborers working in an office, store, saloon, hotel, shop, mine, quarry, manufactory or mill of any character and to farm laborers. Those persons engaged in hauling logs were not in the performance

of any service in any mill or factory. There is no provision of the statute under which these log contractors could claim a lien. Sayles' Rev. Stats., art. 3339a; Rogers v. Dexter, etc., Ry. Co., 85 Maine, 372, 27 Atlantic Rep., 257, 21 L. R. A., 528; Balch v. Railway, 46 N. Y. (1 Sickles), 524.

The lien provided by the Act of 1897 extends only to those rendering personal service, and it does not include, and should not be extended to include, the services of teams. Article 3312, with respect to railroads, specifically provides for a lien for moneys owing for the services of laborers and teams. The Act of 1897 does not contain any such provision. "In neither case is the labor performed by the team that of a laborer." Balch v. New York, etc., Railroad Co., 46 N. Y., 524 (1 Sickles).

*Davis & Davis,* for appellees.—The court did not err in rendering said judgment, because the Act of May 25, 1897, was enacted for the benefit of the laborers, and is to be given a liberal construction to accomplish the end to which the same was enacted. By the terms of the Act a substantial compliance therewith is all that is required to fix the laborers' rights. The pay day of the mill being monthly, the 10th of each month, the debt did not accrue until that time, and the filing of the claim within thirty days after the debt accrued was a compliance with the letter and spirit of the law and fixed the lien. Cash v. Bank, 2 Texas Ct. Rep., 201, 26 Texas Civ. App., 109, 110.

GILL, ASSOCIATE JUSTICE.—The Darlington-Miller Lumber Company, a corporation, sued the Crescent Lumber Company, also a corporation, to recover upon certain notes and accounts and for foreclosure of liens securing them. A receiver was prayed for, and B. I. Sparks was duly appointed.

A number of persons holding claims as laborers against the defunct corporation intervened for the enforcement of their claims, and asserted liens on the sawmill and planer under the Act of 1897. Interveners Dowdle and Crain asserted claims earned under a contract for hauling logs by their own labor with their own teams, to be paid $3 per thousand feet of logs hauled by them. Interveners Barnett, Olgin, Bates and Morton were employed in the mill and planer by the month and performed services from November 1 to December 13, 1903, their wages for the month of November being payable December 10, 1903, and their wages for December being payable January 10, 1904. The others who intervened as laborers were employed at a fixed price per day, and each employe received what was called a "time check" at the end of each day's work. This time check was in effect a promise to pay the sum for which it was given and was payable under the contract on the 10th of the month following its issuance.

The corporation maintained what was termed a commissary in which merchandise and supplies were kept for sale, and the holders of the time checks could exchange them at any time for their agreed equivalent in goods, but this was optional with the holder. Those not used at the commissary or assigned to local merchants in exchange for goods were on the first of the succeeding month exchanged for due bills pay-

able on the 10th of the month, as aforesaid. Their claims are for labor performed between November 1 and December 13, 1903. A part of the claims of Dowdle and Crain, as well as of some of the laborers, were held by assignees who intervened for their enforcement, but as no question grows out of the assignments we do not notice them further. On January 4, 1904, the statutory affidavit was filed with the lumber company and with the county clerk in support of each of the claims for the purpose of fixing the statutory lien.

The validity of the various claims as just charges against the corporation was not questioned, but other creditors resisted the asserted liens on the following grounds: As against the claims of Dowdle, Crain and their assignees it was contended that they did not come within the purview of the statute because the amounts were earned under contract, rather than employment, and the statute gives no lien for the value of the use of teams. As against all the day laborers' claims for liens it was contended that the affidavits were not filed in time. As against all the claims for liens it was contended that under the terms of the statute they did not attach to the mill and planer.

On the agreed facts as stated above the trial court overruled the objections, gave the interveners judgment for the several amounts claimed, and held that each of the claims was secured by the preference lien provided by the statute. The receiver has appealed and repeats here the contentions made in the court below.

The material parts of the statute under which the liens are asserted are as follows: "Whenever . . . any laborer . . . may labor or perform any services in any . . . mill . . . by virtue of any contract or agreement, . . . in order to secure the payment of the amount due by such contract or agreement . . . the . . . employes shall have a first lien upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, or thing or things of whatsoever character that may be created in whole or in part by the labor of such person or necessarily connected with the performance of such labor or service which may be owned by . . . the aforesaid employers." Rev. Stats., art. 3339a.

Article 3339b provides that: "Whenever any . . . employer . . . shall fail or refuse to make payment as hereinafter provided in this chapter . . . said operative . . . or laborer who shall have performed services of any character shall make . . . duplicate accounts of such service . . . and present . . . to the aforesaid employer . . . one of said duplicate accounts within thirty days after said indebtedness shall have accrued. The other of said duplicate accounts shall within the time herein above prescribed be filed with the county clerk. . . . A compliance with the foregoing requirements shall be necessary to fix . . . the lien." Article 3339c provides: "All wages if service is by agreement performed by the day or by the week shall be due and payable weekly, or if by the month shall be due and payable monthly." . . .

Under these provisions the appellant contends that the claims of Dowdle, Crain and their assignees are not secured by a lien because the statute applies to laborers, and Dowdle and Crain were not laborers under any proper definition of that term. We are of opinion the con-

tention is sound. The word laborer means one who labors with his hands for wages and does not include one who contracts for the hauling of lumber with his wagon and team at a fixed price per thousand feet of lumber hauled. Railway Co. v. Matthews, 75 Texas, 94; 18 Enc. of Law, p. 72. He may be more properly termed a contractor, and his remuneration fixed at a round sum per thousand feet includes the services of himself and team, the contract not disclosing what part of the consideration is earned by the use of his team considered separately from his own labor. It is also true that, unlike contracts for personal services, he could have substituted another for himself, or hired other hands and teams without doing violence to his contract. The statute does not provide a lien for the hire of his team and the contract furnishes no means of separating the value of his labor from the hire of the team. That feature of the judgment is therefore reversed and judgment here rendered decreeing that the Dowdle and Crain claims, whether held by them or their assignees are unsecurd by the statutory lien.

Against the laborers who were operating under contracts for monthly salaries the point is not made that they did not file their accounts in time. But as against those whose compensation was fixed at so much per day it is contended that at least a part of their claims accrued more than thirty days before January 4, 1904, by force of the provisions of article 3339c, supra. The question turns upon the fact inquiry as to whether they were day laborers. That their agreed compensation was a fixed sum per day does not of itself control the nature of their employment. Their salaries were payable in cash monthly on the 10th day, and under the terms of their contract they could not effectively demand payment sooner. The fact that they had the option to sign their time checks for goods or to exchange them at the company's store for merchandise does not alter this feature of their contract. They were entitled under their contract and under the statute (article 3339c) to payment in current money, and they were certainly free to contract as to the due date. This being true their claims accrued not earlier than December 10, and the accounts filed January 4 thereafter were in ample time.

The contention of appellant that article 3339c fixing a due date for the wages of daily and weekly laborers being passed for the benefit of other creditors, limited the right of day laborers to agree on a due date, is without merit. There is nothing in its terms which forbids the right to contract as to a due date or imposes upon such a contract the penalty of forfeiture of the lien. The lien itself is predicated upon a contract and presupposes the right to make it. If they contract to be paid at the end of each day, then for the purpose of fixing the lien the time shall be computed from the end of the week. If the payment is contracted to be paid at the end of each week the time is computed from the contract due date. So of employment by the month. It is thus apparent that the last cited article was enacted to free the day laborer of the necessity of computing the time from the close of each day's work.

The contention that the statute was not designed in any case to

confer upon all mill operatives a lien on the mill and machinery in which the labor is performed is perhaps a question of some difficulty, due largely to the confused and ambiguous language of article 3339a. But we are fairly convinced that in a case of this nature the mill and machinery is subject to the lien. The mill was a sawmill. The product of the laborers' work was sawed lumber. This was also the product of the mill, for it could not. be produced except as a joint result of the labor and the mill. The article gives the lien upon tools, machinery and appurtenances necessarily connected with the performance of the work. The mill and fixtures come within these provisions.

Except as above indicated the judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.