JACKSON v. DOWNS et al. †

(Court of Civil Appeals of Texas. Texarkana. June 20, 1912.)

1. FRAUDULENT CONVEYANCES (§ 28*) — TRANSFERS BY INSOLVENT.

Where, prior to the levy of a writ of attachment against an insolvent debtor, he transferred the property to another creditor in satisfaction of a debt, and it did not appear that the property was reasonably worth more than sufficient for its satisfaction, the transferee was entitled to hold the property as against the attachment creditor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 47, 48; Dec. Dig. § 28.*]

2. MECHANICS' LIENS (§ 245*)—ENFORCEMENT —FORM OF REMEDY.

Where plaintiff never had nor was entitled to the possession of property attached by him in an action for a debt, he could not, after failing to establish defendant's ownership of the property, in that action enforce a laborer's lien against the property.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 427–430; Dec. Dig. § 245.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Rehearing denied October 10, 1912.

3. LOGS AND LOGGING (§ 27*)—PERSON ENTITLED—"LABORER."

Where plaintiff contracted to haul logs at a specified rate per thousand feet, he was not entitled to a laborer's lien; the word "laborer," in Sayles' Ann. Civ. St. 1897, art. 3339a, giving such lien, meaning one who labors with his hands for wages, and not including one who contracts for the hauling of lumber with his wagon and team.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 67–71; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 5, pp. 3952–3968; vol. 8, p. 7700.]

Appeal from Upshur County Court; W. A. Phillips, Judge.

Action by M. F. Downs and another against O. E. Smith, in which a writ of attachment was levied on property claimed by W. T. Jackson. From a judgment for plaintiffs, claimant appeals. Reversed and rendered.

See, also, 149 S. W. 288.

Warren & Briggs, of Gilmer, for appellant. M. B. Briggs and Maberry & Maberry, both of Gilmer, for appellees.

WILLSON, C. J. C. E. Smith owned, and under the name "C. E. Smith Lumber Company" operated, a sawmill in Upshur county. He engaged appellees to haul logs to his mill, agreeing to pay them $1.50 to $4.50 per 1,000 feet, according to the distance they might be required to haul the logs. Under the terms of this contract, Smith became indebted to appellees in the sum of $364.21. By a suit commenced May 3, 1910, appellees sought a recovery against Smith of that sum. At the same time, on the ground that Smith was about to dispose of his property with intent to defraud his creditors, appellees sued out a writ of attachment and had same levied on 80,000 feet of rough lumber, valued at $400, as property belonging to Smith. At the time the writ was levied appellant was in possession of the lumber and claimed to own it. Afterwards, as authorized by the statute (Sayles' Statutes, arts. 5286–5312), appellant filed a claimant's oath and bond as a basis for trying the right of property in the lumber. Appellees' contention was that the lumber belonged to Smith at the date of the levy of the writ of attachment. Appellant's contention was that the lumber then belonged to him. A further contention on the part of appellees was that, if appellant then owned the lumber, he owned it subject to a laborer's lien acquired by them against it at a time when Smith owned it. The trial judge found against appellant's claim, and rendered a judgment against him and the sureties on his claim bond in favor of appellees for the sum due them by Smith.

[1] It appeared from written instruments forming a part of the testimony that Smith purchased the sawmill of appellant December 31, 1909, agreeing thereafterwards to pay appellant $4,000 for same, and that, having failed to pay the $4,000, he on April 25, 1910, conveyed the mill and the lumber in controversy to appellant in satisfaction of the debt. There was no testimony to the contrary of that furnished by the written instruments as stated. Obviously, therefore, it appeared that at the time the writ of attachment was levied the lumber belonged to appellant. Appellees seem to have been of the opinion that the conveyance from Smith to appellant was void as to them, because it appeared that at the time it was made Smith was insolvent and that appellant knew him to be so. If the value of the property reasonably was not more than sufficient for the purpose (and there was no testimony showing it to have been more than sufficient), Smith, though insolvent, had a right to convey it to appellant in satisfaction of the debt, and the mere fact that appellant at the time he accepted the conveyance knew Smith was insolvent would not affect the validity of the transaction. Ellis v. Valentine, 65 Tex. 532; Bruce v. Dreyfus, 94 Tex. 192, 59 S. W. 540.

The burden was on appellees to show the lumber to have been subject to their writ. Sayles' Statutes, art. 5302; Lewy v. Fischl, 65 Tex. 311; Boaz v. Schneider, 69 Tex. 128, 6 S. W. 402.

[2] Appellees having failed to discharge that burden, the judgment should have been in favor of appellant, even though it had appeared that appellees had acquired a laborer's lien on the property; for, never having had and not being entitled to the possession of the property, they were not entitled in such a proceeding to enforce their lien.

[3] But it did not appear that they had acquired a laborer's lien on the property. The testimony was that appellees hauled the logs under a contract with Smith, who was to pay them therefor at the rate of from $1.50 to $4.50 per 1,000 feet, according to the distance they might have to haul the logs. In Sparks v. Lumber Co., 40 Tex. Civ. App. 222, 89 S. W. 423, such a lien was claimed in favor of Dowdle and Crain, who, by their own labor and with their own teams, had hauled logs under a contract entitling them to be paid therefor at the rate of $3.50 per 1,000 feet. The court held that the word "laborer" used in the statute (Sayles' Statutes, art. 3339a) meant "one who labors with his hands for wages, and does not include one who contracts for the hauling of lumber with his wagon and teams at a fixed price per 1,000 feet of lumber hauled." "He may," the court further said, "be more properly termed a contractor, and his remuneration, fixed at a round sum per 1,000 feet, includes the services of himself and team; the contract not having disclosed what part of the consideration is earned by the use of his team, considered separately from his own labor. It is also true that, unlike contracts for personal services, he could have sub-

stituted another for himself, or hired other hands and teams, without doing violence to his contract. The statute does not provide a lien for the hire of his team, and the contract furnishes no means of separating the value of his labor from the hire of the team."

The judgment will be reversed, and a judgment will be here rendered in favor of appellant.