## W. F. FELTON v. J. N. JOHNSON.

### No. 3365.    Decided February 14, 1923.

(247 S. W., 837.)

#### 1.—Venue—Suit for Labor Performed.

Action for the commission earned by a broker in sale of land is not a suit for "labor actually performed," such as by the proviso added to subdivision 4, of article 2308, Revised Statutes, by the Act of March 29, 1917 (Laws, 35th Leg., ch. 124, p. 322) may, whether upon written or oral contract, be brought where such labor was performed. Walker v. Alexander, 212 S. W., 713, disapproved.   (pp. 415, 416).

#### 2.—Statutory Construction—Caption of Act.

The caption of an act may be considered as a guide to the legislative intent; but where the fact that the caption is broader · in terms than the language of the Act would otherwise bear is explained by the history of its enactment as shown in the legislative journals, these may be considered in explanation ·of the discrepancy.   Red River Natl. Bank v. Ferguson, 109 Texas, 287.   (pp. 416, 417).

#### 3.—Same—Case Stated.

The proviso added to subdivision 4 of article 2308, Rev. Stats., by the Act of March 29, 1917, covered, in the original form of the bill, the venue of actions, not only for labor performed, but for "any kind of personal services rendered," and the preamble expressed an intent equally broad.   By amendment the latter clause was struck out of the bill, but the preamble was left unaltered.   *Held*, that the usual and ordinary signification of the words "labor performed" was not to be enlarged by the broader intent left in the preamble and expressive only of the effect of the bill in its original form.   (pp. 417, 418).

Question certified from the Court of Civil Appeals for the Seventh District, in an appeal from Dallam County.

The Supreme Court referred the question to the Commission of Appeals, Section B, for their opinion, and same is here adopted and made its answer to the question.

*Tatum & Strong,* for appellant.

The services rendered by plaintiff in the sale of the defendant's property as a real estate agent on an implied contract on a commission basis, is not labor actually performed within the purview and contemplation of the Act of March 29, 1917, amending Article 2308, and said Act does not include and cover such services which would give plaintiff the right to maintain this suit in Precinct No. 2, Dallam County, Texas, Vernon's Sayles' Texas Civil Statutes 1914, Articles 1830, 2308, and the authorities cited thereunder; Vernon's Texas Civil Statutes 1918 Supplement, Articles 1830, 2308; Birge v. Lovelady, 145 S. W., 1194; Sanders v. Geo. M. Hester Cotton Co., 195 S. W., 269; Denton Milling Co. v. Green, 204 S. W., 362;

Russell v. Green, 214 S. W, 448; 11 R C. L., page 499, Section 8; 16 R. C. L., page 412, Section 2; 5 Words and Phrases, pages 39-48; St. Louis A. & T. Ry. Co. v. Matthews, 75 Texas, 92; St. Louis, S. W. Ry. Co., v. Lyle, 26 S. W., 264, 6 Texas Civ. App., 753; Notes on Texas Reports, volume 3, page 1106; 75 Texas, page 92; Milligan v. S. A.. & G. Ry. Co., 46 S. W., 918; Stephens v. Porter, 69 S. W., 423, 29 Texas Civ. App., 556; Lasater v. Waits, 95 Texas, 553; G. & B. V. Ry. Co., v. Berry, 72 S. W., 1049; McCammant v. Webb, 147 S. W., 693; Jackson v. Downs, 149 S. W., 286; Sparks v. Crescent Lumber Co. 40 Texas Civ. App., 222, 89 S. W., 423; 18 American and English Encyclopedia of law, page 72; Weymouth v. Sanborn, 43 N. H., 177, 80 Am. Dec., 144.

*Bailey & Richards,* for appellee.

Appellee has brought this action within the meaning and purport of exception No. Four (4) of Article No. 2308, 1918 Supplement, Vernon's Sayles' Texas Statutes, entitling him to maintain this suit within Justice Precinct No. 2, Dallam county, Texas, in which precinct the labor was performed and the service rendered, which forms the basis of this suit. Vernon's Sayles' Civil Statutes, 1914, Art. 2308; 1918 Supplement, V. S. C. S., Sub. 4, Art. 2308; Acts 35th Legis. (1917) Session Laws, p. 321; 24 Cyc., 808, Title "Labor", footnotes 67 and 72; Bouvier's Law Dictionary, Vol. 2, p. 39, Title, "Labor", Standard Dictionary of the English Language, Title, "Labor"; Weymouth v. Sanborn, 43 N. H. 171, 80 Am. Dec., 144; United States v. Holy Trinity Church, 36 Fed., 303; In Re Ho King, 14 Fed., 724.

As a further evidence the fact that it was a matter of indifference as to what kind of labor was meant, the title of the act says that it is meant to apply to "Labor performed or any kind of personal service rendered." We understand it to be a proper rule of construction that the title of the act may be looked to as a guide to the intention of the legislators.

MR. JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This case is before the Supreme Court on the following certificate from the Honorable Court of Civil Appeals of the Seventh District:

"Appellee, J. N. Johnson, brought this suit in the justice's court Precinct No. 2, of Dallam county, against appellant, W. F. Felton, to recover $175.00, as broker's commission, alleged to have been earned by appellee in the sale of certain property belonging to appellant, situated in Dallam county, After trial and judgment in the Justice's Court the case was appealed to the County Court, where judgment was rendered for the appellee and the appellant prosecutes this appeal to this court from said judgment.

"The appellant resided in Precinct No. 1, Dallas county, Texas, and in proper time filed and presented his plea of privilege to be sued in the precinct and county of his said residence. Under the pleading and the evidence the plea should have been sustained unless the venue in Dallam county can be maintained by virtue of the following provision of Art. 2308, Sec. 4, as amended by the Acts of the 35th Legislature, (1917) Chapter 124, p. 321: 'Provided that in all suits to recover for labor actually performed, suit may be brought and maintained where such labor is performed whether the contract for same be oral or in writing.' The appellee resided in Dallam county and his services as a broker in the sale of the land, which was also situated in Dallam county, were performed in such county, and the concrete question presented by the plea of privilege is whether such services are "labor", within the terms of the law just quoted.

"The court of Civil Appeals for the Second District, in the case of Walker v. Alexander, 212 S. W., 713, held, Judge Buck dissenting, that such services do constitute "labor" within the terms of said Act. On original hearing we followed this decision and affirmed the judgment of the lower court. On rehearing, the majority of the court became convinced that we were in error in this ruling and therefore granted the motion for rehearing, and held that the plea of privilege should have been sustained, and reversed and remanded the cause, with instructions that the plea of privilege be sustained and that the cause be transferred to the Justice court, Precinct No. 1, of Dallas county. This decision is, as we have already stated, in conflict with that of the Court of Civil Appeals of the Second District, in the said case of Walker v. Alexander, supra, and one of the members of this court is inclined to think that we were in error in so holding.

"The question thus raised as to the proper construction of the provisions of the Act referred to, is one that will be constantly recurring in the practice and an early decision thereof is desirable, but under the circumstances a conclusive decision is only possible by a decision of your Honorable Court.

"We have, therefore, thought it proper, pending the final disposition of this cause, to certify to your Honorable Court for decision the following question: Did we err in holding that the plea of privilege should have been sustained under the circumstances heretofore stated?"

Art. 2308 of Vernon's Sayles' Revised Civil Statutes of Texas of 1914 reads as follows:—"Every suit in the court of a justice of the peace shall be commenced in the county and precinct in which the defendant, or one or more of the several defendants, resides, except in the following cases and such other cases as are or may be provided by law." The aforesaid Art. of the statutes is followed

by three sub-divisions providing certain exceptions. Then, the article proceeds thus: "In the following cases the suit may, at the plaintiff's option, be brought either in the county and precinct of the defendant's residence or in that provided in each exception." This last quoted language was immediately followed by sub-division 4 of the article in question, which sub-division, *prior to 1917,* read as follows:—

"Suits upon a contract in writing promising performance at any particular place may be brought in the county and precinct in which such contract was to be performed."

By the Act of March 29, 1917, the last quoted sub-division was. amended by adding thereto the following provisions:

"Provided that in all suits to recover for labor actually performed, suit may be brought and maintained, where such labor is performed, whether the contract for same be oral or in writing."

As to whether or not "labor actually performed," within the purview of the amendment last quoted, would include the professional services rendered by a real-estate broker, has apparently never been before our Supreme Court, either directly or indirectly. It was first considered in an appellate court in Texas by the Court of Civil Appeals at Fort Worth in the case of Walker v. Alexander, 212 S. W., 713. In that case, that court held such services ·to be "labor" within the meaning of this statute. As shown by the certificate now under consideration, the Court of Civil Appeals, in the instant case, on *original* hearing, followed the opinion in Walker v. Alexander, *supra,* and affirmed the trial court in overruling the plea of privilege.

Upon a careful consideration of the opinions of each of the Courts of Civil Appeals just referred to, it is quite clear that both courts would have held just the contrary to what they did hold but for the language of the *caption* of the Act of 1917, *supra.* In other words, both courts held, and we think correctly, that the word "labor," in its usual and ordinary signification, would not include professional services rendered by a real-estate broker. We think the great weight of authority supports this conclusion of the Courts of Civil Appeals. For instance, "Words & Phrases" p. 1320, says:—

"The word 'labor,' in legal parlance, has a well-defined, understood, and accepted meaning.. It implies continued exertion of the more onerous and inferior kind, usually and chiefly consisting in the protracted exertion of muscular force. 'Labor' may be business, but it is not necessarily so, and business is not always labor. In legal significance, labor implies toil; exertion producing weariness; manual exertion of a toilsome nature."

In this same connection, the Supreme Court of New Hampshire has written a most interesting opinion in case of Weymouth v. Sanborn, 43 N. H., 171, 80 Am. Dec., 144. In the latter case, a doctor

was trying to collect for professional services by levying on a homestead, contending that an account for such services was a claim for "labor" to which even a homestead was subject. The Supreme Court in that State overruled such contention. We quote from that opinion, as follows:—

"The common and ordinary signification of the term labor accords, we think, with the definition given by the best lexicographers, and is understood to be physical toil. And the term laborer is ordinarily employed to denote one who subsists by physical toil, in distinction from one who subsists by professional skill. The exception of claims for labor would not, therefore, ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or salaried officer, agent, railroad and other contractors, but would be confined to claims arising out of services where physical toil was the main ingredient, although directed and made more valuable by mechanical skill."

In the absence of any provision in a statute evidencing a contrary intention, it will be presumed that the legislature used words in their usual and ordinary meaning. Consequently, we find the Courts of Civil Appeals in this State, in the opinions first above referred to, basing their decisions, not upon the language of the very Act in question, but upon its *caption*, the *latter* reading, in part, as follows: "Providing that all suits to recover for labor performed or any kind of personal services rendered may, at the option of the plaintiff, be brought and maintained where such labor is performed or personal services rendered."

It is doubtless true that a caption may be used as a guide and circumstance showing the legislative intent. In as much as "labor" in its *broadest* sense, *might* include personal services of any kind rendered, we are not surprised that the Courts of Civil Appeals, both at Forth Worth and Amarillo, gave the statute this broad construction, basing their conclusions upon the language of the caption and the light it shed upon the intention of the legislature. In this connection, the Amarillo Court says: "We would not be inclined to give the statute under consideration such a broad construction were it not for the fact that from the language of the caption it was clearly the intent of the legislature to include those who perform 'any kind of personal service.'" As before stated, it is equally clear that the Fort Worth Court based its conclusion upon the language of the caption in the same way.

It will be observed that aforesaid language of the caption is very much broader than the wording of the statute itself. The latter speaks only of "labor actually performed." The former talks about recovering not only for "labor performed" but also for "any kind of personal services rendered." Under such circumstances, it is proper

to try to account for that discrepancy, if the legislative history of the Act will clear it up. See: Red River National Bank v. Ferguson, 109 Texas, 287, 206 S. W., 923. In the latter case, our Supreme Court looked not only to the journals of the house and senate, but to the governor's message in that connection as well. In that case, Chief Justice Phillips says:—

"As originally passed, the bill had the identical caption of this Act—that is, the Act as finally adopted. And as originally passed, in respect to the wife's unlimited power to contract, it conformed fully to the caption."

Judge Phillips then shows that the Act there in question was recalled from the governor's office by the Legislature and amended by important changes in its provisions. Following this, that eminent jurist adds:—"The broad terms of the title of the Act in respect to the wife's authority to contract are thus accounted for. They were intended as a part of a title of an Act as broad as their general import, but which, as finally passed, left her in that particular with only restricted powers. The title of an Act is of influence in its construction. An Act is to be interpreted in the full light of its title. Missouri, K. & T. Ry. Co. of Texas v. Mahaffey, 105 Texas, 394, 150 S. W., 881. But the title, of itself, has no enacting force, and cannot confer powers not mentioned in the Act. Sutherland on Statutory Construction, sec. 339."

Upon the authority of Bank v. Ferguson, *supra,* counsel for appellant in the case at bar, on motion for rehearing, brought before the Court of Civil Appeals the journals of the Legislature and showed the history of this Act of 1917 as reflecting the intention of the Legislature in its enactment. Upon the showing made, and which we shall hereafter set out more fully, the Court of Civil Appeals set aside their original opinion and sustained the plea of privilege, ordering the case transferred to the county of appellant's residence. It does not appear that this same showing as to the contents of the legislative journals in connection with this Act was made before the Fort Worth Court of Civil Appeals. Had it been, we feel rather confident that said Court would likewise have set its former ruling aside. Both opinions of the Amarillo court were written by Justice Hall and while he expressed some doubt as to the correctness of the court's final holding, he entered no formal dissent.

The journals of the legislature show that the *Act itself,* just like its *caption,* heretofore quoted, as introduced and passed in the house, provided: "Providing that all suits to recover for labor performed or any kind of personal service rendered may at the option of plaintiff be brought and maintained where such labor is performed or personal service rendered."

As so passed by the house, it went to the senate. In the senate, it

was amended so as to read as first hereinbefore quoted. As so amended by the senate, it was concurred in by the house and went to final passage. In other words, the senate, with the concurrence of the house, refused to include "any kind of personal services rendered" within the Act. It is absolutely clear to us that such action completely negatives the theory that the legislature intended to bring all kinds of labor and personal services within the terms of this Act. As passed by the house, its meaning was entirely clear. The senate knew that the language employed by the house would include practically every account or claim one person might have against another, for every service rendered involves either mental or physical effort. The senate was clearly unwilling to employ this all-embracing language, so its members used only the words "labor actually performed," and eliminated "any kind of personal services rendered."

It is true that, so finally passed, the Act itself and its caption are in conflict. That being true, the caption must yield. Bank v. Ferguson, *supra.* It is quite evident that the legislature, in amending the Act itself in the senate, overlooked amending the caption so as to conform thereto, just as was true in the statute under consideration by our Supreme Court in Bank v. Ferguson, *supra.* The direct and positive act of the legislature in amending the house bill itself as it did seems to us to completely overcome the force of the caption, which at most, is but a circumstance tending to show legislative intent. Bank v. Ferguson, *supra.*

The author of this bill and each branch of the Legislature evidently had in mind the usual and ordinary meaning of the word "labor" in enacting this law. Otherwise, there would have been no necessity to specifically include in the bill, as originally drawn and passed by the house, not only the provision for "labor performed" but also the words "any kind of personal services rendered." They had these distinctions in mind. By their affirmative acts they showed beyond any doubt, as we see it, that they did not want to include professional services within the word "labor" as used in this statute. In other words, they showed they did not desire to give to that word its *broadest possible* meaning, but only its *usual* and *ordinary* meaning. In view of the history of this bill, we think we would do violence to the plain intent of the Legislature if we recommended a construction of this statute which would include professional services of a real-estate broker within its terms. Before we could make such a recommendation, we think it would be necessary for us to insert in this statute the very provisions which the legislature not only refused to include therein but expressly eliminated therefrom. The courts should not do that. To do so, would clearly invade the prerogatives of the legislative branch of the State Government. We are of the view that the Court of Civil Appeals, in its opinion on *rehearing* in the instant case, rendered the correct judgment.

Therefore, we recommend that the certified question herein be answered in the negative.

### By the Supreme Court.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.