**BLACKMON & ASSOCIATES, INC.,**
**Appellant,**

v.

**Aubra COOPER, Appellee.**

**No. 4341.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 26, 1969.

Rehearing Denied Oct. 17, 1969.

C. O. McMillan, Stephenville, for appellant.

John P. Ritchie, Mineral Wells, for appellee.

GRISSOM, Chief Justice.

Aubra Cooper sued Blackmon & Associates, Inc., and Larry Blackmon for the balance due on a contract for labor and material used in painting and otherwise completing six houses. His contract was made with J. E. Fitzgerald, who, plaintiff alleged, was their partner and agent. Cooper also sought attorney's fees by virtue of Article 2226, Vernon's Ann.Civ.St. Defendants verified answer was to the effect that, as to them, plaintiff's account was not just or true in whole or in part and that Fitzgerald was neither their agent nor partner. Defendants alleged Cooper's claim did not come within the statutory provisions allowing recovery of attorney's fees.

In a trial to the court, judgment was rendered against only Blackmon & Associates, Inc., for the unpaid balance plus $650.00 attorney's fees. Said corporation has appealed.

Appellant's first four points are that the court erred in finding (1) that between May 1st, 1966, and August 16th, 1966,

Cooper, at appellant's request, acting through its agent Fitzgerald, furnished labor and material for painting and completing six houses because there was no evidence to support that finding; (2) because the evidence was insufficient to support it; (3) that the court erred in finding that said corporation owed Cooper $1378.00, because the evidence was insufficient to support a finding that appellant owed any amount and that (4) the court erred in rendering judgment against Blackmon & Associates, Inc., for any amount. In support thereof appellant says Fitzgerald was engaged in building houses in Mineral Wells and that Larry Blackmon, individually, arranged with The First National Bank of Mineral Wells for financing house building by Fitzgerald and that a loan for that purpose was made to Fitzgerald, payment being guaranteed by Blackmon; that the money so borrowed was deposited in an account with that bank styled "Blackmon & Associates, Inc., Special Account" and checks were authorized thereon when signed by "Fitzgerald and one of two other persons"; that Cooper testified he met Fitzgerald about May 1, 1966 and Fitzgerald asked him to finish six houses in the "Blackmon" Addition to Mineral Wells; that when Cooper started work he asked Fitzgerald if he had written contracts, stating that "Larry wouldn't pay nothing unless he had a contract", whereupon, Fitzgerald brought him contracts exactly like those he had previously executed when doing work for Blackmon & Associates, Inc. Appellant says that while two of the contracts were for labor and material required to finish two houses owned by appellant those accounts have been paid and that the other four contracts, for the unpaid balance on which the judgment was rendered, were not contracts with said corporation but were contracts with Blackmon, individually, or Fitzgerald, and they did not even purport to bind appellant. It says Cooper's judgment is based on contracts made with Fitzgerald and that there is no evidence to support the findings necessary to support the judgment holding Blackmon &

Associates, Inc., liable for the unpaid balance due for painting the four houses the title to which was in Fitzgerald.

Cooper's counter point is to the effect that there was sufficient evidence to support the findings essential to support the judgment, among others, that Cooper furnished Blackmon & Associates, Inc., labor and material of the value of $3,051.00, at the request of its agent, Fitzgerald. Appellee says that, relying upon prior dealings in performing similar services for appellant, he bid for and obtained the job of painting, textoning, taping and bedding six houses for appellant, the record title to two being in appellant and record title to four being in Fitzgerald; that, relying upon his past practices while working for appellant, Cooper requested Fitzgerald to furnish the usual Blackmon & Associates, Inc., contracts showing their agreement; that this was done; that partial payments for Cooper's work on his contract to complete six houses were made by checks on "Blackmon & Associates, Inc.,-Special Account" and that each check was delivered to Cooper with a "certificate" on the letterhead of Blackmon & Associates, Inc., reciting that it did not thereby approve Cooper's work and it would not accept it until it had made final inspection. One such certificate, executed on the letterhead of appellant and purporting to be its act, accompanied a check for $500.00 on Blackmon & Associates, Inc.,-Special Account showed it was Cooper's "draw" for painting "four" units, although it described only two houses, the record title to which was in Fitzgerald. Appellee concludes that the evidence establishes or, at least, supports the conclusion that Cooper (1) agreed to complete six houses as a group; (2) that his work was done for appellant and that (3) partial payments therefor were made by appellant. There was evidence that, in accord with Cooper's previous practice while working for appellant, he was approached by a person, to wit, Fitzgerald, who represented he was "running jobs" for appellant and wanted Cooper to complete

the six houses, that Fitzgerald was operating out of appellant's office in Mineral Wells; Fitzgerald obtained and presented to Cooper green contract forms exactly like those previously presented to him by appellant's agent when he had been employed to do such work for appellant; Fitzgerald prepared and approved appellee's claims against appellant and signed some of the checks issued on said account paying on Cooper's contract for completing six houses, including the two whose record title was in appellant. Proceeds of a loan guaranteed by Blackmon, appellant's president, constituted the sole source of funds placed in the Blackmon & Associates, Inc.,- Special Account out of which Fitzgerald operated in building houses and out of which payments to appellee were made. The evidence shows that the signatures of any two of the following three persons were required on checks on said account, to wit, Manson, appellant's Vice-president, Mrs. Hamm, its bookkeeper and, apparently, the manager of appellant's Fort Worth office, and Fitzgerald. Appellant is mistaken in its contention that the evidence conclusively shows Fitzgerald's signature was a prerequisite to cashing checks on said account. There was evidence that the signatures of any two of said three named persons was sufficient. In other words, the signatures of two of appellant's employees were sufficient. Checks were drawn on said account to pay Cooper for more than half the contract price for completing six houses. That contract was made by Fitzgerald, who was found by the court to have acted as the authorized agent of appellant. There was evidence of further close association between appellant and Fitzgerald in building and completing the six adjacent houses in the same addition in Mineral Wells. The evidence indicates that building and selling said houses, obtaining loans by the purchasers and closing the deals were, to a large extent, controlled by appellant and its president. Illustrative thereof, Mr. Hall, manager of an abstract company that closed the sale of some of said houses, testified with reference to Lot 29, Block 6, of the addition in which all six houses were built, that the closing statement from J. E. Fitzgerald to Boyer was signed by Blackmon & Associates, Inc., as the seller, and, although this purported to be a sale by Fitzgerald, Hall received the closing contract from Blackmon & Associates, Inc.; that the closing statement received by Hall for the sale of Lot 28, Block 6, showed the seller was Fitzgerald and the purchaser was Saunders but Fitzgerald's name was signed thereto by Mrs. Hamm, who, as heretofore noted, was the bookkeeper and, apparently, the manager of appellant's Fort Worth office, and that Hall's instructions on the sale to Saunders was that the seller's statement must be approved by Hyde, who was an employee of Blackmon & Associates, Inc. The banker who made the loan which constituted the sole source of said account of Blackmon & Associates, Inc., Special Account, testified that he didn't know Fitzgerald but he knew Blackmon, who had previously been a customer of said bank, and that the loan to Fitzgerald and the deposit in said account, through which Fitzgerald was enabled to build said houses, was obtained solely on the credit of Blackmon, appellant's president. Cooper testified that Fitzgerald asked him to do the work for appellant; that somebody had started the work but "got run off or something." Cooper testified that after completing his work on the six houses he never again saw Fitzgerald; that when he completed his work on the six houses he called Mrs. Hamm at the appellant's Fort Worth office asking for payment of the balance due for completing the six houses and that she told him that as soon as "they" sold one "they" would send him a check for the balance. Fitzgerald signed the contract with Cooper in Blackmon & Associates, Inc., office, near the place the six houses were constructed; that was the place from which Fitzgerald operated; that was his office. There was evidence

that the agreement to complete the six houses was a package job.

Plaintiff's exhibit 1 shows a deed from appellant to Cortes-Lugo conveying Lot 8, Block 7, of the Lamar Heights Addition to Mineral Wells. It was executed by appellant, acting through Manson, its vice-president, who was one of the persons authorized to write checks on "Blackmon & Associates, Inc.,-Special Account." It was acknowledged before Mrs. Hamm of appellant's Fort Worth office. Appellant's deed to Glanton conveying Lot 18, Block 7, Lamar Heights Addition was acknowledged before Mrs. Hamm. The four lots in Fitzgerald's name and the two in appellant's name were adjacent lots in the same addition in Mineral Wells. Fitzgerald's deed to Boyer conveying Lot 29, Block 6 of the Lamar Heights Addition was acknowledged before Mrs. Hamm in Tarrant County. Said bank's record of the sale by Fitzgerald to Kees of Lot 30, Block 6, Lamar Heights Addition shows a check by appellant to that escrow account for $167.61. Appellant paid the surveyors to survey that lot. A letter on appellant corporation's letterhead from its Fort Worth office signed by Mrs. Hamm conveyed to the abstract company closing that deal the deed and builder's warranty of completion to use in closing the sale and it contained statements that the insurance policy had been mailed and if anything further was needed "let us know." Likewise, a letter on appellant corporation's letterhead from their Fort Worth office was written to the party closing the sale to Boyer. It purported to be by Fitzgerald but was executed by Mrs. Hamm. It contained instructions for closing that sale. Fitzgerald's contract for the sale of Lot 28, Block 6, to Saunders was executed by Mrs. Hamm. Cooper's bill to Blackmon & Associates, Inc., for the $134.-00 balance due for painting the house on Lot 18, Block 7, was marked "OK" by Fitzgerald and paid out of Blackmon & Associates, Inc., special account on a check signed by Fitzgerald and Mrs. Hamm. The deed conveying some of said lots to J. E. Fitzgerald showed the consideration paid by Fitzgerald was $10.00 and the assumption of the balance owing on a note for $36,750.00, which was secured by a deed of trust to Larry Blackmon, trustee. Various receipts executed by Cooper for payments on said contract to paint six houses recited receipt of payment by Blackmon & Associates, Inc., and that such payments by appellant were for Cooper's "draw" on such contract.

At appellant's request, the court filed findings of fact and conclusions of law containing the following: (1) Fitzgerald asked Cooper to bid on finishing the six houses for him and Blackmon & Associates, Inc.; (5) contracts furnished Cooper showed the owners of the six houses to be appellant and Fitzgerald; (6) such contracts were furnished to Fitzgerald by appellant; (7) said contracts were presented to Cooper and signed by him at a Mineral Wells office occupied by appellant and its employees and representatives; (14) for several years prior thereto Cooper had contracted to do the same kind of work for appellant under the same or similar circumstances; (17) appellant signed the contract for the sale to Boyer of Lot 29, Block 6, although title thereto was in Fitzgerald; (18) at the request of appellant, acting by its agent, Fitzgerald, Cooper furnished labor and material for painting the six houses for $3,051.00; (19) by accepting and paying out of said special account for plaintiff's labor and material appellant ratified and confirmed Fitzgerald's contract with Cooper; (22) there was due by appellant and unpaid on said account $1,378.-00; (23) appellant, by furnishing Fitzgerald with such contract forms, permitting him to occupy its office and authorizing him to sign checks on said account, caused Cooper to believe Fitzgerald was its agent and induced him to perform said work for appellant. Among the conclusions of law were these: (1) Fitzgerald had actual authority to so act for appellant; (2) Fitzgerald had implied authority to employ persons to do the work Cooper did

and (4) appellant was liable to Cooper for the unpaid balance on said contract.

■ After studying the record, we conclude there was some evidence and that it was sufficient to authorize the court to find that Fitzgerald acted as the authorized agent of appellant in employing Cooper to finish the six houses. We think the evidence supports findings essential to support the judgment. (See 4 Tex.Jur.2d 395). We approve the conclusion that appellant is liable for the unpaid balance due on said contract for labor done and material furnished by Cooper.

Appellant presents other points to the effect, among other things, that the court erred in finding the contracts presented to Cooper by Fitzgerald were furnished by appellant; that appellant caused Cooper to believe Fitzgerald was its agent, and the like. We have considered all of them. They are overruled. We think reversible error is not shown.

■ Appellant's 12th and last point complains of the award of attorney's fees for the reason that Cooper's suit was not to recover for labor done and material furnished, but was a suit on a special contract. It cites Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435, 441. This suit is not based upon a "special" contract. It is a suit to recover for labor done and material furnished. Article 2226 authorizes recovery of attorney's fees in a suit upon such a claim. We think the record justifies an award of attorney's fees. Dueitt v. Barrow, Tex.Civ.App., 384 S.W.2d 214. Ferrous Products Co. v. Gulf States Trading Co., 160 Tex. 399, 332 S.W.2d 310. Most decisions which appear to be to the contrary are distinguishable on the ground that the nature of such suits was different, being for damages for breach of contract, to recover the agreed purchase price in a sale contract, and the like. Said point is overruled.

The judgment is affirmed.