**TENNECO OIL COMPANY, Petitioner**

v.

**PADRE DRILLING COMPANY, Inc., Respondent.**

No. B–1821.

Supreme Court of Texas.

April 29, 1970.

Rehearing Denied June 3, 1970.

2. See Articles 8228 and 8263e § 75.

R. A. Taylor, Jr., Crystal City, Keys, Russell, Watson & Seaman, James C. Watson, Corpus Christi, for petitioner.

Jackson & Jackson, G. Curtis Jackson, Crystal City, Kleberg, Mobley, Lockett & Weil, J. Lev Hunt, Corpus Christi, Texas, for respondent.

CALVERT, Chief Justice.

In this suit by Padre Drilling Company, Inc., against Tenneco Oil Company to recover certain sums alleged to be due on a written contract; or in quantum meruit, for drilling a test oil and gas well in Zavala County, the trial court's judgment awarded Padre the sum of $71,519.36 on its principal claim and $20,000 as an attorney's fee. The court of civil appeals affirmed. 445 S.W.2d 247. We reform the judgments of the courts below by eliminating the attorney's fee item and affirm the judgments as thus reformed.

Tenneco's application for writ of error was granted solely on its point challenging Padre's right to the attorney's fee recovery. However, inasmuch as the application has been granted, we will briefly discuss Tenneco's several no evidence points which, if sustained, would entitle it to reversal of the judgments of the courts below and rendition of judgment that Padre take nothing. The other points of error are deemed to be without merit and are overruled without discussion.

The contract between the parties required Padre to drill the well to a depth of 6,650 feet or first coring point, unless Tenneco elected "to have supervision of the well turned over to it, drilling suspended, well abandoned, or drilled to a lesser depth * * *." It also provided that in the event "heaving shale or other similar formation" were encountered which made drilling "abnormally difficult or hazardous, as determined by a COMPANY [Tenneco] representative," or caused "sticking of drill pipe or casing, or other similar difficulty" which precluded "drilling ahead under reasonably normal procedures," Padre should, without delay, "exert every reasonable effort to overcome such difficulty and immediately notify" Tenneco. The contract then provided that when such a condition was encountered, Tenneco should "assume risk of loss or damage to the hole and to CONTRACTOR'S [Padre's] equipment in the hole." The contract also provided that while Padre was operating on a day-work rather than a footage payment basis, Tenneco would furnish fishing tools and services, mud, chemicals and loss circulation material, and the depreciated value of Padre's

uninsured subsurface equipment lost in the hole.

Payment to Padre for its services was primarily to be on a basis of "$6.35 per linear foot of depth actually drilled," with substituted payment on a per day basis, at sums certain, in specified contingences. If Tenneco was of the opinion that drilling or completion of the well was being unreasonably delayed by reason of some act or omission by Padre, contrary to its contractual obligations, Tenneco would be relieved from all liability for payment or expense obligations which would otherwise be due for drilling such well, and could either direct Padre to move the rig over and start a new hole or take over the drilling operation.

Padre began to drill the well on April 7, 1966, and almost immediately ran into heaving shale. On April 29th, when drilling had reached a depth of 5,110 feet, the drill pipe parted at a depth of 2,988 feet. Thereafter, efforts were made to fish the drill pipe out of the hole; and on May 11th, the drill pipe parted again, this time at a depth of 3,000 feet. After disagreement between the parties as to their respective rights and duties, Tenneco requested Padre to skid its rig over and commence a new hole at its own expense. Padre refused, and was directed by Tenneco to move the rig off of the lease. Thereafter, Padre presented Tenneco with an account for services and expenses which Tenneco refused to pay.

The focal point of disagreement which led to this litigation concerned responsibility for Padre's failure to complete the drilling of the well to the required depth. It was Padre's contention that it had encountered heaving shale which made drilling abnormally difficult or hazardous, or caused sticking of the drill pipe or "other similar difficulty" which precluded continued drilling under reasonably normal procedures, and required that Tenneco assume risk of loss or damage to the hole and to Padre's equipment; that refusal

by Tenneco to assume the risk breached the contract and relieved Padre of any further obligations under the contract. It was Tenneco's position that the drilling had been unreasonably delayed by the furnishing by Padre of defective drill pipe; therefore, that it was not liable for loss of the hole and Padre's equipment, but could exercise its option to require Padre to begin a new well and thus relieve itself of all liability to Padre for services rendered or expenses incurred in drilling the first well. The issues thus made were the principal issues submitted to the jury.

The jury answered all relevant issues in Padre's favor. The vital jury findings which are attacked by Tenneco as being without support in the evidence are that on April 24th and at a depth of 3,000 feet Padre encountered heaving shale or other similar formation which (1) "made drilling abnormally difficult or hazardous," and (2) "caused sticking of drill pipe or other similar difficulty" which precluded "drilling ahead * * * under reasonably normal procedures," (3) of which conditions Padre "immediately notified Tenneco." In deciding whether there is in the record evidence of probative force to support the findings, we honor the rule which requires that we consider only the evidence and reasonable inferences in support thereof and disregard evidence which would support opposite findings. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914). We consider that the findings are supported by the evidence and inferences summarized below.

Tenneco admitted in answer to an interrogatory that Padre encountered heaving shale or other similar formation at approximately 3,000 feet. Padre's tool pusher explained a number of entries made by the drilling crews on a drilling report which was kept for the benefit of both Padre and Tenneco. From April 18th until the surface pipe was set at 2,000 feet, things went all right; but beginning on April 24th, the report showed time spent each day washing and reaming to get through loose

shale which would fall into the hole when the drill stem was pulled to replace the drill bit. On the 24th, 315 feet of the hole filled with loose shale which required three hours of redrilling. In the early morning hours of the 25th, one hour was spent pumping shale from the hole, and from 9 a. m. to 12 noon, three hours were spent washing and reaming through 600 feet of shale which had fallen back into the hole. On the 26th, three hours were spent washing and reaming through 700 feet of fallen shale. Similar experiences were recorded on the 27th and 28th, and on the 29th before the drill pipe broke. When those employed to do so went back in the hole to try to fish the pipe out, they "had more heaving shale" which had fallen on top of the pipe and they "had to wash through it." Padre continued trying to get through the shale until May 11th when the pipe parted again. This witness telephoned progress reports each morning to Tenneco's Company Supervisor or its Drilling Superintendent.

Padre's driller, with sixteen years of experience, testified that the hole was "a tight hole all the way," by which he meant that the "[h]ole keeps falling in on you."

The pipe was virtually new, having been purchased some thirty days before it was used on the Tenneco well. Two experts tested sections of the pipe involved in the partings and testified that it more than met American Petroleum Institute specifications and requirements for drill pipe of like nature. Padre later drilled nearly one hundred wells with the same drill pipe without having any trouble with it.

We turn now to the problem of the attorney's fee. As indicated at the beginning of this opinion, Padre's suit was on its contract and alternatively in quantum meruit. Its recovery of $71,519.36 was on its contract and consists of the following items: $19,050 for drilling services at the contract footage price; $18,108 for drilling services at the contract day rate; $20,361.- 36 for value of its equipment lost in the hole, and $14,000 paid for third party services and equipment in the fishing operation.

■■■ Inasmuch as there is no provision in the contract of the parties for the payment by Tenneco of an attorney's fee, the award cannot stand unless it is authorized by Article 2226, Vernon's Tex. Civ.Stat. New Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914 (Tex.Sup.1967). And since Art. 2226 is penal in character, it must be strictly construed. Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup.1962); Perry v. Leuttich, 132 Tex. 159, 121 S.W.2d 332 (1938).

Art. 2226 authorizes a recovery of attorney's fees by "any person having a valid claim ·against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, * * *." Padre's judgment for an attorney's fee must be reversed if its claim against Tenneco does not fall into one of the seven classes enumerated in the statute. The claim is obviously not one for overcharges on freight or express, lost or damaged freight or express, or stock killed or injured; therefore, the judgment must be reversed unless the claim can be held to be for (1) personal services rendered, (2) labor done, or (3) material furnished, or (4) is founded upon a sworn account or accounts.

■ Under our holding in Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75 (1958), and Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup.1962), the suit is not founded upon a sworn account or accounts within the meaning of Art. 2226 because Padre's account is not one "in which there is a sale upon one side and a purchase upon the other, whereby title to *personal* property passes from one to the other * * *."[1] 316 S.W.2d at 78.

1. Emphasis the court's in Meaders v. Biskamp.

We next consider whether the claim is for "personal services rendered," for "labor done," or for "material furnished."

The legislative history of Art. 2226, as well as its present wording, indicates that claims based on contracts of the type involved in this case do not fall into any of the three classes. Art. 2226 had its origin in an act of the 31st Legislature in 1909. See 14 GAMMEL'S LAWS OF TEXAS 93. That act authorized recovery of attorney's fees in a reasonable amount, not to exceed $20, by a person having a bona fide claim, not exceeding $200, against a person or corporation "for personal services rendered or for labor done, or for material furnished [etc.] * * *." See Missouri, K. & T. Ry. Co. of Texas v. Mahaffey, 105 Tex. 394, 150 S.W. 881 (1912). The act was thus applicable only to claims which lay exclusively within the original jurisdiction of Justice of the Peace courts. The Supreme Court of the United States very properly described the act as "a police regulation designed to promote the prompt payment of small claims and to discourage unnecessary litigation in respect to them," and declared: "[w]e may imagine that some other kinds of claims might as well have been included; but it is to be presumed that the legislature was dealing with an actual mischief, and made the act as broad in its scope as seemed necessary from the practical standpoint." Missouri, K. & T. R. Co. of Texas v. Cade, 233 U.S. 642, 34 S.Ct. 678, 58 L.Ed. 1135, 1138 (1913). Such being the purpose and scope of the act when it was adopted, we are convinced that it was intended to apply only to claims for personal services rendered, labor done or materials furnished by the claimant for or to the person or corporation against which the claim was asserted.

In the course of time, the original act has been amended to add other classes of claims and to remove the limitations on the amount of claims to which the statute is applicable and on the amount of fees recoverable, but there is nothing in the language of subsequent amendments indicating a legislative intent to change the nature of the claims referred to in the 1909 act as for "personal services rendered," "labor done" and "material furnished." Neither is there anything in the original act, nor in subsequent amendments, indicating that those terms should be given any meaning other than their usual and ordinary meaning as is required by Article 10, Vernon's Tex.Civ.Stat.

■ We had occasion in Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex. Sup.1962), to consider the usual and ordinary meaning of the words, "personal services", as used in Art. 2226. In that case we pointed out the difference between claims for "services" and claims for "personal services"; and we held that claims for "personal services", within the meaning of Art. 2226, are only those claims for services rendered by the claimant personally. We reaffirm that holding.

■ A claim for "labor done" is a claim for a physical exertion type of personal service. Not all personal services are labor, but all labor is a personal service. One of the definitions of "personal services" found in Webster's Third New International Dictionary is "economic service involving the either intellectual or manual personal labor of the server rather than a salable product of his skill (physicians, architects, and garbage collectors equally sell personal services)." In Felton v. Johnson, 112 Tex. 412, 247 S.W. 837 (1923), in construing a venue statute authorizing suits "to recover for labor actually performed" to be brought "where such labor is performed," we quoted with approval a definition of "labor" found in WORDS AND PHRASES, as follows:

"The word 'labor,' in legal parlance, has a well-defined, understood, and accepted meaning. It implies continued exertion of the more onerous and inferior kind, usually and chiefly consisting in the protracted exertion of muscular force. * * * In legal significance, labor implies toil; exertion producing

weariness; manual exertion of a toilsome nature." 247 S.W. at 838.

And in holding in St. Louis, A. & T. Ry. Co. v. Matthews, 75 Tex. 92, 12 S.W. 976 (1889), that one to whom money was due on a subcontract to furnish railroad ties, at a stipulated amount per tie, was not a "laborer" within the meaning of a statute which gave a lien to laborers, we defined the word "laborer" thusly:

"The word 'laborer,' as used in the statute, evidently means one who performs manual services in the construction, repair, or operation contemplated by the statute, and does not embrace one who may work in preparing something of his own to sell to a railway company, after it has been rendered suitable through his toil, to be used in the construction or repair of a railway." 12 S.W. at 976.

In harmony with the holding in *Matthews,* the court of appeals in Sparks v. Crescent Lumber Co., 40 Tex.Civ.App. 222, 89 S.W. 423 (1905, writ ref'd), denied a laborer's lien to persons who contracted to haul lumber, saying:

"The word 'laborer' means one who labors with his hands for wages, and does not include one who contracts for the hauling of lumber with his wagon and team at a fixed price per 1,000 feet of lumber hauled."

Accord, Cotton Belt State Bank v. Roy H. Hatcheries, Inc., 351 S.W.2d 325 (Tex.Civ. App.—Waco, 1961, no writ); American Surety Co. of New York v. Stuart, 151 S.W.2d 886 (Tex.Civ.App.—Fort Worth 1941, no writ); Dunn v. Hankins, 127 S.W. 2d 983 (Tex.Civ.App.—San Antonio 1939, no writ); Beakley v. Lind, 32 S.W.2d 671 (Tex.Civ.App.—San Antonio 1930, no writ); Farmers' Elevator Co. v. Advance Thresher Co., 189 S.W. 1018 (Tex.Civ.App. —Dallas 1916, writ ref'd); Jackson v. Downs, 149 S.W. 286 (Tex.Civ.App.—Texarkana 1912, no writ).

▆▆ Considering the foregoing definitions of "personal services" and "labor" as those terms are used in Art. 2226, it should be self-evident that Padre has not "rendered" any personal services and has not "done" any labor for Tenneco. Not even Padre's employees performed personal services or labor for Tenneco. The personal services rendered and labor done by Padre's employees in performance of its contract with Tenneco were rendered and done for Padre. Presumably their services and labor have been paid for by Padre; and presumably there are no claims therefor against either Tenneco or Padre. At least no such claims are asserted in this case. It should also be self-evident at this point that a corporation cannot have a claim for "personal services rendered" or for "labor done" within the meaning of Art. 2226. This holding does not render the statute unconstitutional. The word "persons" includes "corporations," and corporations are just as much entitled to the benefits of Art. 2226 as are individuals. This does not mean, however, that corporations may be the owners of every type of claim mentioned in the statute. They may no more be the owners of claims for personal services rendered and labor done than individuals not selling personal property may have suits based upon sworn accounts.

▆▆ We are not to be understood as holding that claims for personal services rendered and labor done cannot be founded upon contract. A contract for purely personal services or for labor only will support an award of an attorney's fee. For cases in which attorney fees have been properly allowed on claims for personal services and labor performed pursuant to contract, see Shirey v. Albright, 404 S.W. 2d 152 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.), and Danaho Refining Company v. Dietz, 398 S.W.2d 307 (Tex. Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). On the other hand, a suit based primarily upon a contract for a product or for a general service will not authorize an

award of an attorney's fee merely because performance of the contract may require employment of others to render personal services or to perform labor.

We recognize that our holdings here are in conflict with a number of court of civil appeals' decisions, some of which were rendered after our 1962 decision in Van Zandt v. Fort Worth Press, supra. As examples of the latter, see Blackmon & Associates, Inc. v. Cooper, 445 S.W.2d 577 (Tex.Civ. App.—Eastland 1969, writ ref'd n. r. e); Shivers v. Feuhs, 438 S.W.2d 585 (Tex. Civ.App.—Houston 1969, writ ref'd n. r. e.); Nolen v. Rig-Time, Inc., 392 S.W.2d 754 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); Delhi Pipeline Corporation v. Lewis, Inc., 408 S.W.2d 295 (Tex. Civ.App.—Corpus Christi 1966, no writ); H. B. Zachry Co. v. Ceco Steel Products Corp., 404 S.W.2d 113 (Tex.Civ.App. —Eastland 1966, no writ). Dueitt v. Barrow, 384 S.W.2d 214 (Tex.Civ.App.—Corpus Christi 1964, no writ); Wyche v. Wichita Engineering Company, 374 S.W.2d 728 (Tex.Civ.App.—Dallas 1964, no writ); South Texas Building Co. v. Ideal Engineering, Inc., 402 S.W.2d 292 (Tex.Civ. App.—Houston 1966, writ ref'd n. r. e.). It could, perhaps, more properly be said that the relevant holdings in the listed cases are in conflict with our holdings, expressed and clearly implied, in *Van Zandt*. Any holdings in the listed cases or in unlisted cases in conflict with our holdings in the instant case are expressly disapproved.

This brings us to Padre's contention that its claim is based in part upon "material furnished." Corporations can be the owners of claims for material furnished so as to be entitled to attorney fees under Art. 2226. As examples, see Ferrous Products Co. v. Gulf States Trading Co., 160 Tex. 399, 332 S.W.2d 310 (1960), and Page v. Superior Stone Products, Inc., 412 S.W. 2d 660 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). However, the evidence in

this case does not reflect that any materials were "furnished" by Padre to Tenneco. All of the evidence is that the materials which Padre claims to have "furnished" to Tenneco were, in fact, furnished to and purchased and paid for by Padre and used by it in the performance of its contract. This, we hold, is not the type of claim to which Art. 2226 refers in speaking of claims for "materials furnished."

The judgments of the courts below are reformed to eliminate the award to Padre of the attorney's fee in the sum of $20,-000, and, as reformed, the judgments are affirmed.

WALKER, J., concurs; GREENHILL, J., joins.

McGEE, J., notes his dissent.

HAMILTON, J., not sitting.

WALKER, Justice (concurring).

While I concur in the judgment rendered in this case, I do not interpret Van Zandt v. Fort Worth Press, Tex.Sup., 359 S.W.2d 893, as holding that claims for "personal services" within the meaning of Article 2226 are only those claims for services rendered by the claimant personally. Our opinion in that case expressly reserved the question of whether a corporation might recover attorney's fees in a suit on a claim for personal services. It is true that the statute must be strictly construed, but this does not mean that we should go out of our way to limit its scope. I would hold that a corporation may, in a proper case, recover attorney's fees when the claim is strictly for labor done or personal services rendered by the corporation, through its employees, to the defendant.

GREENHILL, J., joins in this concurring opinion.