H. H. WATSON, Appellant,

v.

James E. UPFIELD et al., Appellees.

No. 15598.

Court of Civil Appeals of Texas.

Dallas.

April 1, 1960.

Rehearing Denied May 6, 1960.

Henry Klepak, Dallas, for appellant.

C. C. Renfro, Dallas, for appellees.

YOUNG, Justice.

This suit was on quantum meruit for value of services allegedly rendered by appellant to Upfield and other appellees in procurement of third party contacts whereby financial assistance was made available to Upfield, thus enabling the latter to establish a factory plant in the Dallas area. A trial to the court resulted in a defendant's judgment on findings of fact and conclusions of law; plaintiff duly appealing.

H. H. Watson was a licensed realtor of Dallas; defendants sued being the U. M. & F. Mfg. Corporation, a Delaware corporation with principal office and place of business at Carrollton, Texas, its subsidiary, the U. M. & F. Mfg. Corporation of California, and James E. Upfield individually, who is president of both concerns. It is alleged that in the latter part of the year 1955, Upfield, then operating his California Company in manufacture of precision parts, was desirous of also locating a Dallas based company, contacting plaintiff and his associate A. F. McKnight with a view of securing a factory site. According to appellant's statement of the case, Upfield later disclosed to plaintiff that considerable financing was required preliminary to the purchase or lease of factory site and its operation; seeking the aid and assistance of plaintiff to the end of interesting some third party to finance the enterprise; further claiming that through his efforts and McKnight's this defendant became acquainted with one L. C. Burch, representing the Murchison Interests, and as a result procured financing in the sum of $275,000; that a reasonable value of the services so rendered on behalf of defendants was $25,000, with further obligation for payment of attorney's fee in sum of $7,500; that defendant Upfield had admitted to having sought the services of plaintiff for location of a factory site on a real estate commission basis, but denying that same extended to procurement of financing. Said defendant contended that all financial arrangements obtained from the Murchison Interests came as a result of his own efforts and not through plaintiff, and by general denial asserts he is not indebted to plaintiff for any sum or sums of money.

The testimony adduced in the main was from the plaintiff and McKnight on the one hand; Upfield and L. C. Burch on the other. It appears without dispute that the initial meeting of Upfield and Burch was at the instance of McKnight; Burch however already having knowledge that Upfield was desirous of locating a factory in the Dallas area; his company, a manufacturer of precision parts, dealing extensively with the Collins Radio Corporation through its Carrollton, Dallas County plant. This information Burch had communicated to McKnight who in November 1955 had corresponded with Upfield in California concerning prospective factory sites, having

in view a realtor's commission. Upfield later came to Dallas and to the office of Watson, testimony of the parties on what transpired then and later differing in material respects.

It was plaintiff's statement that after several discussions with Upfield relative to prospective building sites, the latter told him of being in no position to make any choice without some preliminary financing; showing the witness pictures of the California plant, brochure and financial statement, which he looked over and was favorably impressed as a result; Upfield telling him of having been unable to make a satisfactory deal with any local bank or individual; that McKnight then took over, calling at the office of Mr. Burch, President of the City Transportation Company (Taxicabs) and a Murchison Enterprise, ostensibly to rent a car for use in showing Upfield other locations, but in fact to possibly interest Burch in his project and the financing of same. McKnight testified that after introductions he requested Burch to look over the pictures of Upfield's California Plant, brochure and financial statement; that Burch likewise became favorably impressed, asking the latter to call later for further discussions.

Upfield, on the other hand, reiterated that the discussions with plaintiff related only to a factory site, exhibiting his financial statement, brochure, etc., and going with McKnight to the office of Burch for rental of car in that connection. Mr. Burch testified that after introductions and stating that he had no rental cars, asked Upfield if he had found a satisfactory site; the discussion then leading to the need of Upfield for financial assistance; Burch then looking over his brochure and plans and becoming interested, asked him to call again when the matter could be gone into at length. Mr. Burch later went to California with Upfield, looked over his plant there; the upshot being that by formation of the U. M. & F. Mfg. Corporation of Carrollton, Texas, exchange of stock, issuance of debentures, and participation by Murmanill Corporation (a Murchison Enterprise) that money became available to the extent of $275,000, resulting in location and equipment of defendant's Carrollton based U. M. & F. Mfg. Corporation; presently operating on property leased from Crosby Realty Company.

Mr. Watson had nothing to do with these financial transactions, nor does he claim to have had any part in their consummation; claiming to be entitled to compensation in the nature of a "finder's fee" as one who brought Upfield in touch with third parties, resulting in a deal from which such defendant made money. See Vol. 17, Words & Phrases, p. 16. The defense thereto was that plaintiff had been solicited to locate a satisfactory site for the proposed plant in line with earlier correspondence and not otherwise. The trial court found adversely to plaintiff's claim of money due for services rendered; followed by clearly stated findings both of fact and law.[1]

---

1. Such findings are here quoted:

    1. "I find that plaintiff never proved he made any agreement or contract at any time whereby any one or more of the defendants was or were obligated to pay plaintiff any compensation for services rendered in obtaining any financing of any business activity of any one or more of the defendants."

    2. "I find that plaintiff, H. H. Watson, did not say or do anything to help either defendant in any way in obtaining any financing for either one or more of the defendants for the benefit of either defendant in connection with any business operation."

    3. "I find that A. H. McKnight was an associate of plaintiff, H. H. Watson, I further find that he did not say or do anything to help either defendant in any transaction whereby any one or more of the defendants obtained financing for the operation of any business activity for either one or more of the defendants."

    4. "I further find that H. H. Watson and A. H. McKnight did not render any kind of service which benefited either defendant in any way in obtaining any desired financing of any of their business activities."

    5. "I find that neither H. H. Watson nor A. H. McKnight acting together or

Judge Williams obviously accepted defendants' version of all contacts between plaintiff, McKnight and Upfield, that (quoting from brief of appellees) "Burch did not talk to Watson about anything other than a plant facility, nor did Watson indicate in any way that he was interested in the alleged financing other than the fact that if the financing was satisfactory, then he, Watson, would have an opportunity to obtain a lease for Upfield."

Appellant's primary points, conversely stated, are (1) error of court in failing to render judgment for plaintiff "for the reason that all the evidence is uncontradicted that appellant, through his servant, agent and employee, brought the appellee and one L. C. Burch together, resulting in the appellee obtaining $275,000.00 in financing"; and (2) error in grant of judgment to appellees "because there was no evidence by the appellees to support such judgment, and that the court by his own findings of fact and conclusions of law clearly shows his misunderstanding of the evidence, for the findings of fact are in direct conflict with the testimony."

■ We have carefully examined the record and to the contrary of the points just quoted are of the opinion that the evidence as a whole has elements of material conflict; having support in testimony of probative force. And "where there is probative evidence to support the findings and judgment, they are controlling on the re-viewing court and will not be disturbed, even though the evidence is conflicting and the appellate court might have reached a different conclusion." 4 Tex.Jur.2d § 839, p. 400.

All points of appeal are overruled and judgment of the trial court is affirmed.

separately did anything which resulted to the financial benefit of either defendant or any two or more of them."

6. "I find that neither of the defendants received any benefit of any kind from any act of plaintiff H. H. Watson or his associate, A. *H*. McKnight, which created a liability on any one or more of the defendants under the doctrines of quantum meruit."

7. "I further find that if plaintiff Watson or his associate A. *H*. McKnight, rendered any service to any one or more of the defendants, such service was insignificant and was without measurable financial value to any one or more of the defendants."

1. "I conclude that neither defendant nor any one or more of them ever became obligated by contract or under the doctrine of quantum meruit to pay plaintiff Watson for any service he or his associate, A. *H*. McKnight, rendered to any one or more of the defendants."

2. "I further conclude that if plaintiff or his associate, A. *H*. McKnight, rendered any beneficial service to any one or more of the defendants, they, H. H. Watson and A. *H*. McKnight, failed to prove the value of such service and failed to prove which of the defendants received such benefit and thereby became liable for payment thereof."