Lois Jones SHIREY, Appellant,

v.

Gerry ALBRIGHT, d/b/a Phillip Albright Company, Appellee.

No. 189.

Court of Civil Appeals of Texas.

Corpus Christi.

May 26, 1966.

Rehearing Denied June 16, 1966.

Wade & Howard, by Virgil Howard, Corpus Christi, for appellant.

Boone, Davis, Cox & Hale, by Owen D. Cox, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a suit for a real estate broker's commission. The broker, Gerry Albright, brought suit against the appellant Lois Jones Shirey, a feme sole, for a six per cent commission due under an "authorization to sell" listing contract and for attorney's fees under Art. 2226, Vernon's Ann.Civ.St. Trial was had before the court without the intervention of a jury resulting in a judgment in favor of the broker in the amount of $1285.50, plus attorney's fees in the amount of $350.00. The parties will be referred hereafter as they were in the trial court.

The facts that gave rise to this dispute are principally admitted by both parties and/or are contained in the trial court's findings of fact. Material differences as to the facts will be noted specifically. The defendant owned a house and lot in Corpus Christi, Texas, which she desired to sell. She contacted the plaintiff with regard to employing him to sell her home for her. The defendant called at the plaintiff's office and spoke with Mrs. Mary Young Knight, a real estate saleswoman employed by the plaintiff. The listing agreement was prepared by Mrs. Knight and signed by both parties on the 20th day of January, 1965. This agreement authorized plaintiff to sell or procure a purchaser for the defendant's home for the sum of $21,000.00 or subject to FHA appraisal price. A subsequent appraisal by the FHA resulted in an appraisal for FHA loan purposes in the amount of $21,425.00 conditioned upon certain minor repairs and a termite inspection. The defendant was mailed a copy of the FHA appraisal and she expressed a willingness to sell her property as financed by the FHA subject to the terms of that appraisal. The plaintiff subsequently showed the home to Commander James E. Sanders of the U.S. Navy who was interested in buying a home in Corpus Christi. The plaintiff or one of his employees succeeded in getting a written offer from Commander Sanders to purchase the defendant's home subject to the following conditions: (1) Sanders being able to obtain a FHA loan in the amount of $20,100.00, (2) immediate occupancy pending the approval of the loan application, (3) the defendant's agreement to make the minor repairs and have the termite inspection required by the FHA appraisal, (4) the defendant to furnish evidence that all utilities and appliances were in satisfactory working order and finally, (5) that defendant is to pay "all permissible closing costs."

The Commander's offer to purchase was presented to the defendant by Mrs. Knight on or about the 15th day of February, 1965. At this meeting the executed contract of Commander Sanders was fully discussed, particularly in connection with the subject of the closing costs. Mrs. Knight explained to defendant what costs she would be obligated to pay under the contract and gave her a breakdown as to which costs constituted "permissible closing costs" and which costs were the seller's usual closing costs. Although the defendant testified otherwise at the trial, she stated in her deposition that she was told that she would be obligated to pay both sums as set out in the sales contract. There was no evidence that any other provisions of the contract were objected to or discussed by the defendant. After such explanation and discussion, the defendant agreed to the terms of the contract. She signed it and returned the contract to Mrs. Knight. As Mrs. Knight was leaving, the defendant called her back into

the house and took back the contract and scratched out her name. The defendant stated that she was not going through with the sale; that she did not approve of the provision in the contract wherein it was provided that she pay "all permissible closing costs." The court found that it was at this time, the defendant had changed her mind and no longer desired to sell her house on the terms expressed in the sales contract.

The plaintiff, being anxious to complete a sale on terms acceptable to both parties entered into the transaction personally. Plaintiff telephoned the defendant and tried to get her to go ahead and sell her house. The court found that following the scratching out of her name, the defendant had various conversations with the plaintiff and his agents; and that in these conversations the defendant represented that she was willing to sell her home on the terms as expressed in the Sanders sales contract if the provision requiring her to pay "all permissible closing costs" were removed. Plaintiff testified "it encouraged me as a broker to get a secondary contract." The trial court found that the plaintiff, relying upon these representations of defendant, extended his efforts to obtain a second contract from Commander Sanders to purchase the property. The plaintiff then secured a second sales contract executed by Commander Sanders dated February 17, 1965, which was in all material respects the same as the first contract, except that it did not include the "all permissible closing costs" provision. The defendant rejected this contract in no uncertain terms.

Defendant-appellant by her first, second, third and fifth points contends in effect that plaintiff-appellee is not entitled to a real estate commission because he did not produce or procure a purchaser willing and able to buy her property on the terms specified in the listing agreement; because the signed contract was never delivered to the purchaser before she withdrew her acceptance; that her acceptance was communicated only to her own agent; and that plaintiff was a proposed third party beneficiary in a proposed contract of sale that never became effective. Both parties quote from 9 Tex. Jur.2d 732, Brokers, Sec. 44:

"Recovery of a commission by a broker requires proof that he has performed the service contemplated by the terms of his employment. It is said that there are three methods by which a real estate broker may earn a commission: (1) by procuring from a purchaser a valid enforceable contract on the terms proposed by the vendor; (2) by producing a purchaser to whom a sale or exchange is in fact made on terms satisfactory to the vendor; (3) by producing a purchaser, ready, able, and willing to buy or exchange on terms specified in the contract of employment, and who offers to do so. When the right to recover is based on one of these situations, the principal may not effectively urge that another situation in which the broker might have earned his commission has not been alleged and proved."

The defendant argues that the sales contract different in certain respects from the listing agreement (i. e., permissive closing costs, repairs, termite inspection, FHA loan and possession) and therefore such variance from the listing agreement is fatal to an enforceable contract. The defendant quotes from the case of Quaile v. McArdle, 244 S.W.2d 695, Tex.Civ.App.1951, ref. n. r. e., where Justice Norvell said:

"It is well settled that the offer to purchase must meet the terms of the listing agreement. Even a slight variance will be fatal."

Plaintiff agrees with the law as quoted from Texas Jurisprudence and from the above-cited case and says that he has met the terms of the listing agreement and refers us to a pertinent portion of the listing agreement which reads as follows:

"*If* a sale or exchange is made or a purchaser *procured by you, the undersigned* or any other at the price and upon the terms specified herein, or *at other terms and price accepted by the undersigned* or

if sold or exchanged within six months after the termination of this contract to anyone who was shown the property from whatever source during its life, *the undersigned agrees to pay you as commission 6% of the selling price.*" (Emphasis supplied.)

Plaintiff states that he has never contended that he furnished a purchaser willing to buy defendant's property on the exact terms set forth in the listing agreement. However, he does contend that he did procure a purchaser at other terms and price accepted by the defendant, and is therefore entitled to his commission under the "authorization to sell" contract.

■ The "authorization to sell" listing agreement does not require the plaintiff to procure a "sale" of the property on the exact terms set forth in the listing agreement. The contract provides that in consideration of the listing of the property with the plaintiff, the plaintiff agreed to use his diligence in procuring a purchaser. This he did, actually at a sales price that was higher than the amount set forth in the listing agreement. The contract not only gave the plaintiff an exclusive right to sell the property, but by its terms he could offer the property at any price and upon any terms, and if the terms and price were accepted by the defendant, then the defendant became obligated by her agreement to pay him the specified commission. Defendant's promise to pay a commission to plaintiff upon the happening of any one of several contingencies was in the form of a unilateral contract. This type of contract is completed by the promisee's performing the act or acts called for, not by such promisee making any reciprocal promise or promises. 13 Tex.Jur.2d 939, Contracts, Sec. 20; see 17 C.J.S. Contracts, § 8, p. 579. When defendant was presented with a purchaser offering to buy the property, upon terms and at a price which the defendant once accepted, she then became obligated on her listing contract to the plaintiff. There has never been any contention made that Commander

Sanders was not a qualified purchaser, or that he would not perform the contract as signed. Nor is there any evidence of fraud. However, even after the defendant signed the contract she could repudiate it as far as Commander Sanders was concerned as she apparently did. It is true as appellant contends, that the defendant would not be obligated to sell the property to Commander Sanders if her acceptance of his bilateral contract was not communicated to Sanders and was rejected before the contract had been placed out of her control. Here, there was never any delivery of the contract to anyone other than to appellant's own agent. Delivery to an agent is not delivery to a third party and there is no delivery so long as the instrument is still in the control of the principal.

■ Appellant contends that the phrase "accepted by the undersigned" as used in the "authorization to sell" should be construed to mean that such acceptance could only be expressed by the completion of a binding contract of sale between Sanders and the defendant. We do not believe that this interpretation is supported by the listing agreement. The "authorization to sell" calls for the acceptance of the "other terms and price" and makes no requirement as to an acceptance of a contract of "sale" or any other specific form of acceptance.

■ Defendant argues that plaintiff is not a beneficiary under the first sales contract; that since the contract was never completed between the purchaser and the seller, plaintiff could derive no benefit from it. This contention is without merit. Plaintiff's agent came to defendant with the sales contract, explained it to her and requested that she accept it. Defendant was not bound to take the deal, and if she refused, she owed the plaintiff nothing. But, on the other hand, if the sales contract met with her approval and she desired to take the deal offered, she was then obligated to pay plaintiff for his services for procuring such a purchaser. See Donahue v. Fuller, 5 S.W.2d 1037, Tex.

Civ.App.1928; Mason v. Able, 215 S.W.2d 377, Tex.Civ.App.1948, n. r. e.; Miller v. Carlson, 390 S.W.2d 64, Tex.Civ.App.1965, n. r. e. Appellant's points 1, 2, 3 and 5 are overruled.

Plaintiff contends that he is also entitled to recover his commission by virtue of obtaining the second sales contract. The trial court concluded that at the time the plaintiff procured the second sales contract and informed defendant of the terms of the offer by Commander Sanders that she was bound to pay a commission because she was estopped by her conduct and representations to object to any of the provisions of the said sales contract that might have deviated from the express terms of the listing contract. The defendant-appellant in her points four, and seven through eleven attacked the trial court's findings of fact and conclusions of law wherein plaintiff is permitted to recover his commission on the theory of estoppel.

During the period from February 15 until the 17th there were considerable discussions held between the defendant and plaintiff and plaintiff's agent in an attempt to close the sale. There was no evidence that any of the terms of the first contract were objected to other than the provision concerning the "permissible closing costs" provision. On cross-examination defendant admitted that this was so. Appellant argues that the conclusion of law number 3 filed by the trial court over her objections was erroneous in that it constituted an intermingling of findings of fact and conclusions of law contrary to Rule 296, Texas Rules of Civil Procedure; therefore, there were no findings of fact and conclusions of law that would support a recovery on the theory of estoppel. In this connection appellant argues that the doctrine of estoppel cannot create a liability not created in the contract nor bring into existence a contract not made by the parties. Citing Washington National Ins. Co. v. Craddock; 130 Tex. 251, 109 S.W.2d 165 (Tex.Com. App.1937); 32 Tex.Jur.2d 661–2—Estoppel, Sec. 2.

■ There was ample evidence and the trial court found that the defendant represented to the plaintiff after various conversations that the defendant was willing to sell her house on the terms expressed in the sales contract if the provision requiring her to pay "all permissible closing costs" were removed; that the plaintiff, relying on these representations, extended his further efforts to obtain a second sales contract from Sanders identical in all material aspects except for the omission of the provision dealing with "permissible closing costs". The trial court's conclusion of law No. 3 stated that "at the time plaintiff procured the second sales contract, 'Exhibit D', and informed defendant of such contract and its terms, defendant became bound under the listing contract, 'Exhibit A' to pay the six per cent (6%) commission since she was estopped by her conduct and representations to object to any of the provisions of the said sales contract that might have deviated from the express terms of the listing contract."

■ Rule 296, T.R.C.P. provides that conclusions of law and findings of fact be stated separately. However, this is directory only. The appellate courts will construe the finding and conclusion together and if possible to be in harmony with the judgment so as to support it. Brown v. Frontier Theatres, Inc., 369 S.W.2d 299 (Supreme Court 1963). Assignment of the wrong reasons by the trial court of its conclusions, transformation of the real character of finding, and conclusions, or finding and conclusion that might be mixed, is not reversible error. Whatever their nature makes them, they still are that in substance and in effect. Eubanks v. Puritan Chemical Co., Tex.Civ.App.1962, 353 S.W.2d 90, ref. n. r. e.; Golden State Mut. Life Ins. Co. v. Adams, Tex.Civ.App.1960 340 S.W.2d 77, Durham v. Fort Worth Tent & Awning Co., Tex.Civ.App.1954, 271 S.W.2d 181, err. dism.; Rule 296, T.R.C.P.

 Whether the facts as plead and proved constituted estoppel or waiver, we believe and the trial court found that the defendant induced the plaintiff to perform the additional effort and service by securing the second contract on the reasonable belief that she had waived her objections to the first contract. She will now be estopped to insist on such rights or objections she once had, to the prejudice of the plaintiff. See 60 Tex.Jur.2d 184, Waiver, Sec. 3, and 31 C.J.S. Estoppel § 61, p. 386. See the following cases where similar situations have permitted the plaintiff to recovery although the strict terms of the contract have not been followed and where the defendant waived his objection to the deviation and was thus estopped to complain: Stuckey v. Union Mortgage & Investment Company, 383 S.W.2d 429, Tex. Civ.App.1964, ref. n. r. e.; Fain v. Texas-Hanover Oil Company, 354 S.W.2d 949, Tex.Civ.App.1962, n. r. e.; Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 (Supreme Court 1958); Childress v. Cook, 5 Cir., 245 F.2d 798; Longbotham v. Ley, 47 S.W.2d 1109, Tex.Civ.App.1932, wr. ref. It appears to us that from the findings of fact and conclusions of law, the trial court passed on the ultimate questions before him. We hold that there was sufficient evidence to support the trial court's findings. Plaza Co. v. White, Tex.Civ.App.1942, 160 S.W. 2d 312, err. ref.; Bavousett v. Bradshaw, Tex.Civ.App., 332 S.W.2d 155, n. r. e.; Watson v. Upfield, 335 S.W.2d 777, Tex. Civ.App.1960. Rule 296, T.R.C.P. Appellant's points are overruled.

 In defendant-appellant's sixth point she attacks the judgment of the trial court in awarding attorney's fees in an action based upon an expressed written agreement which did not provide for attorney's fees under Art. 2226, V.A.C.S. Appellant argues that this case involves a special contract to which attorney's fees are not applicable under this statute. We overrule this point. We hold that this was a claim for personal services rendered within the meaning of Art. 2226, supra, and that there was sufficient evidence to support the finding of the trial court. The claim was presented to the defendant more than thirty days prior to the filing of the suit. The plaintiff was represented by an attorney to prosecute his suit, and as found by the trial court $350.00 was a reasonable attorney's fees for these services. Texas Reserve Life Insurance Co. v. Security Title Company, 352 S.W.2d 347, Tex.Civ.App. 1961, n. r. e.; Bradshaw v. Marcum, 321 S.W.2d 352, Tex.Civ.App.1959, n. r. e.; Craft v. Netherton, Tex.Civ.App., 276 S.W. 2d 855.

The judgment of the trial court is affirmed.